No. 68,034

LEA ANN MICHELS, *Appellee,* v. STEPHEN FRED WEINGARTNER, *Appellant.*

(864 P.2d 1189)

Opinion filed December 10, 1993.

*W. Irving Shaw,* of Law Offices of W. Irving Shaw, of Emporia, argued the cause and was on the brief for appellant.

*Larry J. Putnam,* of Patton, Davis & Putnam, P.A., of Emporia, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Stephen Fred Weingartner appeals from the district court's decision that child support payments which had become due and payable to his former wife, Lea Ann Michels, before her current husband adopted the child were not canceled as a result of the adoption. The Court of Appeals affirmed the district court in *Michels v. Weingartner,* 18 Kan. App. 2d 168, 848 P.2d 1010 (1993). Weingartner's petition for review was granted by this court.

On September 30, 1977, Lea Ann Michels was granted a divorce from Stephen Fred Weingartner in case No. D-166-77 in the district court of Lyon County. Michels was given custody of their one-year-old son, Stephen Ronald Weingartner. Weingartner was ordered to pay $150 per month "as support for the minor child of the parties."

In April 1986, Lea Ann Michels married her current husband, Greg A. Michels. In March 1990, he petitioned the district court in Lyon County to permit him to adopt Stephen Ronald Weingartner. Greg Michels alleged that Stephen Fred Weingartner's consent was

"not necessary for the reason that, except for an incidental contribution of $50.00 on November 18, 1988, Stephen Fred Weingartner (father) has failed to assume the duties of a parent for two consecutive years. In support thereof, the Petitioner shows to the Court that the natural father has: 1) refused to pay child support; 2) failed to pay any medical or dental expenses of the minor child; 3) made no telephone contact with the minor child, except in November of 1988, when the minor child called his father and was told 'Don't call me again'; 4) not sent gifts to the minor child; 5) not sent cards or other written correspondence to the minor child; 6) not given money to the minor child; 7) not had any personal contacts with the minor child; and 8) made no inquiries about the child's health or education."

The adoption was granted and a decree of adoption was filed in the district court on May 29, 1990.

Weingartner concedes that since June 1986 he has made no regular payments and only one incidental payment of $50 to Michels for child support. Michels claims that the arrearage totals $6,400, and she seeks that amount plus interest.

In October 1991, Lea Ann Michels filed in case No. D-166-77 a Motion for Judgment and Order to Examine Defendant, Stephen Weingartner. At that time she sought judgment against him for one-half the medical expenses incurred for the boy from September 1986 through February 1990. When Michels filed a notice of hearing of the motion, she included "the determination [of] delinquent child support" as a subject for the proceeding.

Following the hearing, the district court judge signed a journal entry, which was filed on April 1, 1992. With regard to delinquent child support, the district court took "judicial notice of the adoption case file numbered 90-A-06" and concluded that "[t]he child support judgments accruing prior to the date of the adoption are enforceable."

The district court also stated that it rejected Weingartner's estoppel theory. His estoppel theory, in a nutshell, is:

"Having secured valuable rights from her adversary, [Michels] then took it upon herself to try to enforce the monetary obligations that she relied upon as a basis to get those rights. . . . [She] repudiated the action of the

adoption court in determining that Mr. Weingartner's consent was unnecessary and tried to collect the sums just as she could have done before, but without the possibility of waiving his right to consent."

Weingartner appeals, asserting that a natural parent whose parental rights and obligations are terminated by the adoption of that child is relieved of the obligation to make child support payments that accrued before the adoption. He contends that the boy's adoption by Greg Michels severed his parental rights and relieved him of all duties and obligations to the child. He relied on *State ex rel. Secretary of SRS v. Clear*, 248 Kan. 109, 804 P.2d 961 (1991), for support of his contention before the district court and the Court of Appeals.

The Court of Appeals discussed *Clear* and quoted it for the principle that the severance of parental rights relieves duties and obligations. 18 Kan. App. 2d at 170-71. Following its discussion of *Clear*, the Court of Appeals expressly embraced the rationale of *Hopkins v. Yarbrough*, 168 W. Va. 480, 284 S.E.2d 907 (1981). 18 Kan. App. 2d at 172.

In *Clear*, the mother, Barbara Clear, was divorced from Steven Clear in 1978, and she was awarded custody of their children. He was ordered to pay $200 per month for child support, but paid only $50 between 1978 and 1986. In 1986 the children were determined to be children in need of care and were placed in the custody of their grandmother, who received AFDC payments as a result. "In January of 1989, SRS filed a petition pursuant to K.S.A. 39-755 seeking reimbursement from Barbara Clear for the money paid to [the grandmother] in AFDC payments since 1986." 248 Kan. at 111. At the hearing in April 1989, the district court found that "under K.S.A. 1989 Supp. 39-718b, Clear owed SRS $3,904 for unreimbursed assistance paid to the maternal grandmother by SRS for the support of the minor children since 1986." 248 Kan. at 111.

Also at the hearing, Clear executed a written consent form to relinquish and surrender her children to SRS. The district court granted her request to relinquish her parental rights. 248 Kan. at 111. At the hearing,

"SRS did not object to the district court's granting Clear's voluntary relinquishment of her parental rights, but only objected to the district court's finding that, after a voluntary relinquishment of her parental rights, Clear

was not liable to reimburse SRS for any assistance expended on the children *after the relinquishment.*" (Emphasis added.) 248 Kan. at 111-12.

SRS's position was that despite relinquishment of parental rights, as long as SRS was obligated to support the children, the parent would be obligated as well. 248 Kan. at 112. It was SRS's advocacy of an obligation which would continue after the relinquishment which was at issue and which the district court and this court rejected. The Court of Appeals did not distinguish *Clear*, nor did it find *Clear* to be controlling. Instead, it seems either to have been uncertain of the scope of *Clear* or to have rejected what it believed the rule of *Clear* to be in favor of the rule of the foreign cases. The uncertainty apparently was based on the following language quoted by the Court of Appeals:

" 'Our adoption statutes contemplate a complete severance of the child's ties and relationship with his or her natural parents. The natural parent is relieved of all duties and obligations to the child. . . .

. . . .

" '. . . A person who has relinquished parental rights through adoption, a voluntary termination of parental rights, or an involuntary severance of parental rights is no longer a parent. These statutory procedures contemplate a complete severance of the child's ties and relationship with his or her natural parents. The parent whose rights have been severed is relieved of all duties and obligations to the child.

" 'The effect of a voluntary termination is to confer upon SRS the legal consequences, obligations, and incidents that arise out of the status of parent of the child. Clear is no longer a parent and is not liable under K.S.A. 1989 Supp. 39-718b to repay SRS for *any* services or assistance expended on the children's behalf.' 248 Kan. at 117. (Emphasis added.)" 18 Kan. App. 2d at 171.

The emphasis added by the Court of Appeals seems to suggest that the Court of Appeals believed that the relinquishment extinguished Clear's obligation to reimburse the assistance paid by SRS both before and after April 1989. We note that Weingartner relies on the above-quoted language for support of his contention that his obligation to pay past due support terminated at the time of the adoption.

Weingartner's reliance upon *Clear* is misplaced. The above-quoted language from *Clear* does not support his position. Clear's liability for the assistance paid by SRS prior to relinquishment was not an issue on appeal. There was no cross-appeal by Clear from the district court's determination that she owed $3,904 for

assistance paid before the April 1989 relinquishment. At issue in *Clear* were the AFDC payments which were made following the relinquishment by Barbara Clear of her children. *Clear* does not speak to the child support obligations accruing prior to the termination of parental rights and, therefore, is compatible with the Court of Appeals' holding in the present case.

Cases from other jurisdictions, including those considered by the Court of Appeals, which have come to the attention of the court are unanimous in holding that past due child support payments are not extinguished by an adoption decree. The cases discussed by the Court of Appeals are *C. v. R.*, 169 N.J. Super. 168, 404 A.2d 366 (1979); and *Hopkins v. Yarbrough*, 168 W. Va. 480. Some cases not discussed by the Court of Appeals include *In re Marriage of Murray*, 790 P.2d 868 (Colo. App. 1989); *Stambaugh v. Child Support Admin.*, 323 Md. 106, 591 A.2d 501 (1991); and *Napier v. Kilgore*, 284 S.C. 313, 326 S.E.2d 171 (1985).

In *Hopkins*, the natural father's child support payments were in arrears at the time the children were adopted by the stepfather. 168 W. Va. at 481. When the mother sought, after the adoption, an order which would require the father to make the payments that had accrued before the adoption, the trial court ruled against her on the ground that the father had been relieved of his obligations. 168 W. Va. at 482. The mother appealed, and the court stated what was at issue:

"The appellant is not seeking in this action to require the appellee to pay child support for any period of time subsequent to the July 2, 1979, adoption of her two children. Rather, the appellant contends that the Circuit Court of Cabell County was without authority to alter or cancel the liability of the appellee for unpaid child support payments which accrued prior to the adoption." 168 W. Va. at 482.

The West Virginia court stated that pertinent statutes "do not expressly answer the question concerning the [father's] liability for child support arrearages which accrued prior to the adoption." 168 W. Va. at 484. A review of West Virginia cases on related issues and of *C. v. R.* led the court to conclude that "[t]he adoption had no effect upon the previously accrued arrearages." 168 W. Va. at 487. The holding of the court was stated as follows:

"[I]n the absence of fraud or other judicially cognizable and harmful circumstance in the procurement of a decree for child support, a circuit court is without authority to modify or cancel arrearages of a former husband's child support payments, which payments accrued prior to the date of the adoption of such children by the wife's subsequent husband." 168 W. Va. at 487.

As to *Hopkins*, the Court of Appeals observed:

"As in West Virginia, child support payments in Kansas vest as they accrue because they become final judgments on the dates they become due and unpaid. *Brieger v. Brieger*, 197 Kan. 756, Syl. ¶ 2, 421 P.2d 1 (1966). We believe the reasoning of the West Virginia case and any like decisions is persuasive." 18 Kan. App. 2d at 172.

We concur with the Court of Appeals' observation. We agree with the Court of Appeals that the decree of adoption did not relieve Weingartner of his obligation to pay the child support due and owing at the time of the adoption. Child support arrearages which have been reduced to judgment are not extinguished or canceled by the termination of parental rights.

We next consider Weingartner's estoppel argument. The Court of Appeals minimized the significance of his estoppel argument and termed it "ineffectual." 18 Kan. App. 2d at 172. The Court of Appeals stated:

"[S]even other grounds were also alleged to demonstrate defendant's failure to assume parental duties for two consecutive years preceding the adoption petition. When the district court found defendant's consent unnecessary due to failure to assume parental duties for two years, the court did not rest this finding on any specific allegation in the petition. Thus, the finding that defendant's consent was unnecessary does not negate plaintiff's attempt to collect the unpaid child support. Plaintiff is not estopped from seeking the past due payments." 18 Kan. App. 2d at 172.

Weingartner argues that being required to make the child support payments is unfair. His failure to make the payments undoubtedly was a principal ground for the court's granting the adoption without consent. Although we find some merit in his argument, there are factors which support the rejection of his argument by the district court and the Court of Appeals. For one, Weingartner does not contend that he was unaware of the adoption proceeding. He concedes that he was properly served with notice. Thus, he was given the opportunity to contest the adoption and to dispute the allegations of his failure to assume

parental duties, but he remained silent. It may also be noted that when opposing Lea Ann Michels' attempt to recover half of the boy's medical expenses, Weingartner used this same estoppel theory but stated that "[t]he basis for alleging abandonment of the child was that he 'failed to pay any medical or dental expenses of the minor child.' " Thus, on another occasion Weingartner was urging the court to consider his failure to pay medical expenses to be the principal ground for the consentless adoption. Finally, Michels points out that she was not a party to the adoption proceeding. It is not strictly accurate, therefore, to say that she used his failure to pay to her advantage in the adoption proceeding and now wants to force him to pay.

Weingartner cites *Perrenoud v. Perrenoud*, 206 Kan. 559, 480 P.2d 749 (1971), for the proposition that the clean hands doctrine is applicable in this child support action. The fact pattern of *Perrenoud* is enormously complicated. Eight pages of the opinion are devoted to its recitation. 206 Kan. at 561-68. For our purpose, it is sufficient to say that the Perrenouds married, divorced, remarried, redivorced, disputed custody of their children, married, divorced, and remarried other people in a number of states. The dispositive issues on appeal included jurisdiction, conflict of laws, and recognition of foreign decrees.

Weingartner quotes the following language from *Perrenoud*: "A party cannot invoke jurisdiction and power of a court for the purpose of securing important rights from his adversary through its judgment and, after having obtained the relief desired, repudiate the action of the court at his whim and caprice." 206 Kan. 559, Syl. ¶ 4. The reference is to the parent going from one state to another relitigating issues which had been resolved in another jurisdiction, but not to his or her liking. There are no comparable facts in the present case. There is another syllabus paragraph from *Perrenoud* which is more relevant than the one quoted by Weingartner. It states: "The 'clean hands' doctrine, as applied in a child custody case, is an equitable one, is not an absolute, and is to be applied or not applied at the court's discretion in each particular case." 206 Kan. 559, Syl. ¶ 13. We cannot say that the district court abused its discretion in finding that Michels is not estopped from collecting past due child support payments.

The judgments of the Court of Appeals and the district court are affirmed.