In re the Paternity of Demetrius A.Y.:

Shanee Y. and State of Wisconsin, Petitioners-Respondents,

v.

Ronnie J., Respondent-Appellant.
[Case No. 03-1227.]

In re the Paternity of Landon C.Y.:

Shanee Y. and State of Wisconsin, Petitioners-Respondents,

v.

Ronnie J., Respondent-Appellant.
[Case No. 03-1228.]

Court of Appeals

*Nos. 03–1227, 03–1228. Submitted on briefs January 6, 2004.—
Decided February 24, 2004.*

2004 WI App 58

(Also reported in 677 N.W.2d 684.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Hazel J. Washington* of *Washington Law Offices*, Milwaukee.

On behalf of the petitioners-respondents, the cause was submitted on the brief of *John Pintar* of *Milwaukee County Child Support Agency*, Milwaukee.

Guardian ad litem briefs were filed by *William M. Binder* of *Law Offices of William M. Binder*, Milwaukee.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. WEDEMEYER, P.J. Ronnie J. appeals from an order denying a motion to open judgments of paternity, which adjudicated him as the father of Landon C.Y. and Demetrius A.Y. He claims that the trial court erroneously exercised its discretion in denying his motion to open the judgments. Because no reasonable basis exists to deny the motion, we reverse and remand.

## BACKGROUND

¶ 2. On December 8, 1992, paternity actions were filed naming Ronnie J. as the father of Shanee Y.'s childrenDemetrius, born December 5, 1986, and Landon, born February 14, 1988. At the time of the filing, Ronnie was incarcerated. He returned waivers of appearance, executed December 13, 1992, denying that he was the father of either child.

¶ 3. On January 12, 1993, the trial court ordered blood tests to be conducted on May 13, 1993, and adjourned the case to July 13, 1993, for the test results. Neither Ronnie nor Shanee appeared for the blood tests or for the July 13 status hearing. The court ordered a warrant for Shanee's arrest. On August 25, 1994, Shanee appeared on the warrant and acknowledged by signature the trial court's blood test order, which directed all parties to be tested on September 19, 1994, and to appear in court for the results on January 13, 1995. Personal service was not obtained on Ronnie because he was incarcerated at the Milwaukee County House of Correction. Substituted service was effectuated upon his twelve-year-old sister on September 7, 1994. No one informed the court that Ronnie was imprisoned.

¶ 4. Shanee appeared on January 13, 1995. She and the children had been tested. Ronnie did not appear because he was incarcerated at the Kettle Moraine Correctional Facility. He had not complied with the blood test order. The trial court entered two default judgments of paternity against Ronnie. A copy of the judgments was mailed on May 4, 1995, to Ronnie's last known address430 West Burleigh Street, Milwaukee, Wisconsin. He was released from prison in 1997.

¶ 5. On September 25, 2000, Ronnie was arrested on a bench warrant for failure to pay child support as provided in the judgments of paternity. On December 4, 2000, Ronnie made his first *pro se* request to open the judgments of paternity and for a DNA paternity test. The basis for the motion was that he could not be the father because during the relevant periods for conception, he was incarcerated in the Oak Hill Institution. The motion was scheduled for April 5, 2001, but adjourned to May 22, 2001, and then again to June 13, 2001, due to the inability to notify Shanee. On June 13, 2001, Ronnie failed to appear because he was fulfilling an appointment with the Internal Revenue Service and forgot about the paternity court date. His motion was dismissed for failure to appear.

¶ 6. On June 14, 2001, Ronnie, *pro se,* filed a second motion to open the judgments and have paternity testing. The motion was heard on August 8, 2001. Ronnie appeared, but Shanee did not appear. The trial court denied the motion.

¶ 7. On May 22, 2002, Ronnie, by counsel, again moved to open the paternity judgments. The motion was based on WIS. STAT. § 806.07(1)(h) (2001-02),[1] and

---

[1] All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.

alleged that fraud was committed upon the court by Shanee. On August 20, 2002, the court heard testimony and adjourned the matter to November 26, 2002, to review the transcript of the August 8, 2001 hearing in which Ronnie had appeared *pro se*. In the meantime, Ronnie had independent genetic testing performed prior to the November 26, 2002 hearing. The tests conclusively demonstrated that he could not be the father of either child. At the November 26, 2002 hearing, the court appointed a guardian *ad litem* for both children, and adjourned the matter to allow the guardian to investigate the matter.

¶ 8. At the February 11, 2003 hearing, the trial court heard testimony, including Shanee's admission that Ronnie was not the father; she testified that a man by the name of Virgil Davis was the children's biological father. She indicated she had initially named Ronnie as the father because she knew him and liked him. The trial court reviewed the report of the guardian *ad litem,* which recommended opening the action to establish correct paternity. After listening to final arguments from the parties, the trial court denied the motion to open on the grounds that Ronnie did not file his motion in a timely fashion and that it would be contrary to the children's best interests to vacate the paternity judgments. Ronnie now appeals.

## ANALYSIS

█

¶ 9. The genesis of this appeal was a motion to open judgments filed pursuant to WIS. STAT. § 806.07(1)(h). This provision reads: **"Relief from judgment or order**. (1) On motion and upon such terms as are just, the court . . . may relieve a party or

legal representative from a judgment, order or stipulation for the following reasons: . . . (h) Any other reasons justifying relief from the operation of the judgment."

¶ 10. A trial court's order denying a motion for relief under WIS. STAT. § 806.07 will not be reversed on appeal unless there was an erroneous exercise of discretion. *State ex rel. M.L.B. v. D.G.H.*, 122 Wis. 2d 536, 541–42, 363 N.W.2d 419 (1985). We shall not find an erroneous exercise of discretion if the record shows that the trial court exercised its discretion and that there is a reasonable basis for the court's determination. *Id.* at 542. "The term 'discretion' contemplates a process of reasoning which depends on facts that are in the record or are reasonably derived by inference from the record and yields a conclusion based upon logic and founded upon proper legal standards." *Id.* The ultimate determination of reasonableness is a question of law. *Kernz v. J.L. French Corp.*, 2003 WI App 140, ¶ 29, 266 Wis. 2d 124, 667 N.W.2d 751. We conclude that under the facts and circumstances presented in this matter, there is no reasonable basis to support the trial court's decision. Accordingly, we conclude for the reasons that follow, that the trial court erroneously exercised its discretion when it denied the motion to open the paternity judgments.

¶ 11. Although WIS. STAT. § 806.07(1)(h) is to be liberally construed to provide relief from a judgment whenever appropriate to accomplish justice, "it is appropriately used 'only when the circumstances are such that the sanctity of the final judgment is outweighed by the incessant command of the court's conscience that justice be done in light of *all* the facts.' " *Mogged v.*

*Mogged*, 2000 WI App 39, ¶ 13, 233 Wis. 2d 90, 607 N.W.2d 662 (emphasis in original) (citations omitted). "Because subsection (h) invokes the sensibilities of the court, the court must consider a wide range of factors . . . ." *State ex rel. M.L.B.*, 122 Wis. 2d at 552. In reviewing these factors, the court should consider

> the following: whether the judgment was the result of the conscientious, deliberate and well-informed choice of the claimant; whether the claimant received the effective assistance of counsel; whether relief is sought from a judgment in which there has been no judicial consideration of the merits and the interest of deciding the particular case on the merits outweighs the finality of judgments; whether there is a meritorious defense to the claim; and whether there are intervening circumstances making it inequitable to grant relief.

*Id.* at 552–53.

¶ 12. Although it is not altogether clear, we deem that the basis for the trial court's denial of the motion to open the judgments of paternity is a combination of applying the "intervening circumstances" element of the WIS. STAT. § 806.07(1)(h) body of law and the "fairness/finality" concept embodied in *res judicata* principles. Assuming this conclusion to be correct, we commence our analysis.

¶ 13. The factual backdrop for this appeal is undisputed. Ronnie was served with two claims for paternity on December 12, 1992, while incarcerated at the Milwaukee County House of Correction. He executed and returned two waivers of appearance denying paternity.[2] The trial court set January 13, 1995, as the date to produce the results of blood tests that were to have

---

[2] We note that despite the two specific denials of paternity, in Appeal # 03–1227, the default judgment roll incorrectly

been obtained from the children and from Shanee and Ronnie. All, however, did not go as intended or anticipated. Ronnie was never personally served with the order for testing and appearance because he was incarcerated at the Milwaukee County House of Correction. Instead, substitute service was made upon his twelve-year-old sister. Although Shanee and the two children appeared for the January 13 hearing, Ronnie did not appear, nor was he tested.

¶ 14. According to the complaints, Shanee averred that she had sexual intercourse with Ronnie on two separate occasions within the conceptive period and engaged in no similar activity with anyone else during the same time frame. In order to receive aid, Shanee was required to assist in the State's attempt to determine paternity. Default judgments of paternity were entered against Ronnie at the January 13 hearing. After two *pro se* attempts to open the judgments of paternity failed, Ronnie, by counsel, filed a third motion and, with the assistance of Shanee, obtained DNA genetic testing of the two children. The results conclusively excluded Ronnie as the father of the children. Shanee admitted this to be true. In her own words, she named Ronnie as the father because she "had a big liking for him." Shanee, at this time, revealed that both pregnancies resulted from sexual assaults by the biological father, who was the boyfriend of Shanee's aunt. The trial court acknowledged the truth of the matter. It further determined that Ronnie was not the biological father of the children and had no historical relationship with them.

states that the judgment was entered upon *admission* of paternity. Such did not occur in Appeal # 03–1228.

¶ 15. Thus, there was no longer any basis for inferring facts to support the default judgments of paternity. Consequently, there is no legal basis for imposing upon Ronnie the responsibility to support Demetrius and Landon.[3] In succinct terms, facts no longer existed to warrant the judgments of paternity.

¶ 16. The guardian *ad litem,* in part, based his recommendations for reversal on the ground that denying the motion, in essence, would permit a judgment entered solely on perjured testimony to stand. He argues that it is incumbent on this court to declare with full force and authority that a trial court cannot suborn perjury. We agree with the guardian's moral convictions. Perjury must not be tolerated by courts of law. "[P]erjury erodes the integrity of our judicial system." *State v. Canon,* 2001 WI 11, ¶ 9, 241 Wis. 2d 164, 622 N.W.2d 270. It is imperative that "[e]ffective restraints" exist to prevent perjury, which presents an "obvious and flagrant affront to the basic concepts of judicial proceedings." *Id.* (citation omitted). The integrity and respect of our court system, founded on the search for truth and the adherence to principles of fundamental fairness, depends upon circuit court judges, attorneys that practice before them, and witnesses in all matters to act with forthright conviction and a commitment to truthfulness. Permitting perjury to go unchecked results in a "war with justice, since it may produce a judgment not resting on truth." *In re Michael,* 326 U.S. 224, 227 (1945). That is exactly what resulted in this case—a judgment not resting on the truth.

---

[3] The judgments were obtained by default. No express findings of fact were ever made.

¶ 17. Notwithstanding these fundamental deficiencies in the record, the State, relying upon principles contained in the doctrine of *res judicata,* argues that Ronnie was allowed a full opportunity to present evidence in support of his contention that he was not the father of the two children, and he simply failed to avail himself of that opportunity. Thus, the State asks us to let the judgments stand. Paraphrasing this same argument, the trial court, in its written decision, ruled that Ronnie "slept on his rights," and therefore was not entitled to relief. Nevertheless, all the parties, including the court, appeared to recognize that whether the circumstances of fairness outweighed the force and finality of the judgment was a discretionary determination.

¶ 18. The doctrine of *res judicata,* with its companion, collateral estoppel, are founded upon principles of fundamental fairness. *Desotelle v. Continental Cas. Co.,* 136 Wis. 2d 13, 21, 400 N.W.2d 524 (Ct. App. 1986).[4] These doctrines are designed to balance the need to bring litigation to a final conclusion, and every party's right to have a judicial determination made as to their contentions. *Id.* These doctrines, however, as this court has clearly declared in the past, should not be used "to deprive a party of the opportunity to have a full and fair determination of an issue." *Marten Transp., Ltd. v. Rural Mut. Ins. Co.,* 198 Wis. 2d 738, 744, 543 N.W.2d 541 (Ct. App. 1995). Thus, if the record demonstrates

---

[4] *Res judicata* is the term formerly used to describe claim preclusion and collateral estoppel is the term formerly used to describe issue preclusion. *See Northern States Power Co. v. Bugher,* 189 Wis. 2d 541, 549–50, 525 N.W.2d 723 (1995).

that Ronnie never had an opportunity for a full and fair determination of the question of paternity, the doctrine of *res judicata* should not bar relief. From this review, it is easy to conclude that the competing interests of finality and fairness coalesce when considering the application of Wis. Stat. § 806.07(1)(h) and principles of *res judicata*.

¶ 19. From our review of the record, it is an understatement to say that Ronnie was a less than sophisticated *pro se* litigant when he filed his first and second motions to open the judgments of paternity. The affidavits he filed in those motions attest to that condition. To further corroborate this lack of sophistication, we have only to refer to his responses to the court's questions to Ronnie at the August 8, 2001 hearing about his four-year delay in attempting to open these judgments:

> Because every time, like when I go to work or what not, and then I get stopped by the police officers, says you are being arrested for child support. I went to court at one point in year 2000, and I did appear, but the bailiff forgot to turn the paper in; so I got arrested again because he forgot to turn the paper in. I wanted to know— Because I was incarcerated, you know, I didn't have a chance to give a DNA, you know . . . .
>
> . . . .
>
> . . . When I got out in '97, I was in the process of looking for work through temporary services and stuff like that. I didn't know nothing about filing motions and stuff until I started getting arrested. I mean— Then once I got the temporary services, I had to get bus passes, I had to eat, I had to pay for somewhere so I could sleep. I just couldn't afford it. I can't afford no kids no way, because they just not mine. I haven't seen

them, never in my life, and then didn't even know where they were at . . . . I don't know even knows those people [sic].

From what has been recited in this opinion, it is obvious that through most of his travail, Ronnie was the victim of his own uninformed knowledge of the intricacies of the judicial system, receiving the assistance of counsel only in his third attempt to right the record. No judicial consideration of the merits has ever occurred. And now, all parties recognize that a meritorious defense exists to the two false claims of paternity. Based on the foregoing, we reject the State's argument that *res judicata* bars Ronnie's motion to open the judgments.

¶ 20. The State next claims that intervening circumstances cause finality to trump fairness. We reject this position as well. The imposition of the obligation to provide for the welfare of Demetrius and Landon is dependent upon establishing the factual responsibility of parenthood. To impose such an obligation short of a determination on the merits is flawed in both logic and the incessant command of the court's conscience that justice prevail. The State, in its rush to find a surrogate father for these children, which it per force of law has assumed in its role of "in loco parentis," relies upon a "best interests of the children" concept. That is all well and good, but its application presupposes a judgment of responsibility. Under the circumstances of this case, to conclude to the contrary would be to rely upon a tidy legal fiction as a substitute for substantive justice, a remedy that we cannot condone. Moreover, the "best interests" of the two now teenage boys involved in this paternity action are not served by allowing a judgment of paternity to stand against Ronnie—a man who the

boys have never known, who has never played a role in their lives, and who the boys never believed to be their father.

¶ 21. Here, the merits of "intervening circumstances" to create a surrogate father do not rise to the level to trump the very essence of "fairness." Because a fundamental basis, i.e., a factual finding of responsibility, is lacking for these paternity judgments, there is no reasonable basis to support the trial court's exercise of discretion. For all of the preceding reasons, we reverse the order denying the motion to open and remand the matter to the trial court with directions to reverse the paternity judgments declaring Ronnie to be the father, and expunge them from the judgment roll.

*By the Court.*—Order reversed and cause remanded.