Tamara G. HERNANDEZ, p/k/a Tamara G. Allen,
n/k/a Tamara G. Storm, Petitioner-Respondent,

v.

Randolph S. ALLEN, Respondent-Appellant,

KENOSHA COUNTY CHILD SUPPORT AGENCY,
Respondent.

Court of Appeals

*No. 2004AP2696. Submitted on briefs August 24, 2005.
—Decided October 12, 2005.*

**2005 WI App 247**

(Also reported in 707 N.W.2d 557.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Randolph S. Allen*, pro se.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Brenda J. Dahl*, of Kenosha.

114

On behalf of the respondent, Kenosha County Child Support Agency, a brief was filed by *Lori L. Redlin*, and *Jeffrey J. Witthun*, of Kenosha.

Before Snyder, P.J., Brown and Nettesheim, JJ.

¶ 1. NETTESHEIM, J.  The issue raised in this case is one of first impression in Wisconsin: whether an order for adoption extinguishes the former parent's support arrearage. Randolph S. Allen appeals pro se from an order finding that his child support arrearage, accrued prior to the adoption of his biological minor child, was not extinguished by the adoption. Randolph relies on WIS. STAT. § 48.92(2) (2003–04)[1], which provides that "legal consequences of the relationship" cease to exist as a result of the adoption. We disagree with Randolph. We hold that subsec. (2), when read in the context of § 48.92 as a whole, contemplates the alteration in rights and duties of the adoptive and natural parents from the time of the adoption forward and does not nullify prior support arrearage obligations. We affirm.

## BACKGROUND

¶ 2.  When Randolph and his then spouse Tamara were divorced in 1981, Randolph was ordered to pay $20 per week in child support for the minor daughter born during the marriage.[2] Within a year of the divorce, Randolph was held in contempt for failure to pay support and soon after was ordered to serve twenty

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] Thereafter, with the exception of the circuit court proceeding which inspired this appeal, all of the proccedings we describe in this opinion occurred before a court commissioner.

days in the county jail. Another series of contempt motions were filed, dismissed and refiled over the next few years, resulting in Randolph serving a second jail sentence for noncompliance with his child support and job search obligations.

¶ 3.   Tamara remarried. In November 1989, Randolph consented to the termination of his parental rights (TPR) so the child's stepfather could adopt her.[3] By the time of the TPR, Randolph owed over $8400 in child support arrearages. In February 1990, Randolph was ordered to begin repaying the arrearage by a $10 per week wage assignment. A July 1992 order confirmed that Randolph's child support obligation terminated as of the date of the TPR but stated that his obligation for "all arrearage for child support . . . continue." A month later, Randolph initiated an Order to Show Cause, contending that the payment order should be vacated because under WIS. STAT. § 48.92(2) the TPR and adoption extinguished his liability for any arrearage. The motion was denied because, in the words of the court commissioner, "[A]doption does not affect arrearage [accruing] prior to adoption."

¶ 4.   The Kenosha County Child Support Agency continued to attempt to collect the arrearage through a number of contempt proceedings and seek-work orders, and Randolph, proceeding pro se,[4] continued to protest the obligation.[5] Following a child support review hear-

---

[3] Neither the parties' briefs nor the appellate record reveals the date of the adoption.

[4] Randolph maintained that he was not proceeding pro se by choice, and in fact attempted at several junctures to obtain appointed counsel. Each time he was denied as being financially ineligible.

[5] The County was involved because of AFDC payments made to Tamara. In February 1998, Randolph satisfied the

ing held on November 23, 1998, Randolph was ordered to continue making payments on the arrearage.[6] In May 2003, Randolph filed a motion seeking a finding that "all support obligations ended with the [TPR]." The court commissioner denied the motion on the grounds that "[a] TPR does not eliminate past child support arrears . . . [and] these issues are *res judicata* per court order of 11–23–98." As with the prior court commissioner rulings in this case, Randolph did not seek de novo circuit court review of this ruling.[7] *See* WIS. STAT. § 757.69(8).

¶ 5. Thereafter, Randolph sporadically paid toward the arrearage through wage assignments and tax intercepts. Nevertheless, by January 2004 the arrears still were approximately $10,000, and in February 2004 the County filed an order to show cause why Randolph should not be held in contempt. Apparently anticipating that the County would rely, in part, on the court commissioner's prior res judicata ruling, Randolph responded that the matter was not barred by res judicata because he was now relying on the adoption statute, not

---

arrearage relating to the AFDC payment, leaving the arrearage owed to Tamara as the remaining issue.

[6] This order also advised Randolph that he should seek a waiver from Tamara for this arrearage and accumulated interest. However, Tamara refused.

[7] Randolph asserts that the first time he learned he still would be responsible for arrearage post-TPR was via an order signed by Kenosha County Circuit Court Judge Barbara Kluka that he received over two years after the TPR occurred, by which time it was too late to appeal. The record confirms that the TPR was on November 9, 1989 and the order was not signed until July 31, 1992. The record also reflects, however, that Randolph appeared pro se at a February 1990 hearing, which resulted in a wage assignment toward arrears.

the TPR statute. The court commissioner rejected Randolph's efforts to have the collection efforts against him halted.

¶ 6. This time Randolph sought de novo review before the circuit court. He argued there, as he does here on appeal, that child support arrearage is a legal consequence of a parent-child relationship and that WIS. STAT. § 48.92(2) makes plain that all legal consequences cease to exist upon adoption. The circuit court conceded that it could see Randolph's argument, but it ultimately was not persuaded. The court held that Randolph's child support obligation survived the severance of the parent-child relationship at the TPR proceeding and that the subsequent adoption did not eliminate that obligation. Since Randolph recently had begun making payments, the court did not find him in contempt but ordered him to continue paying.

¶ 7. Randolph appeals. The County and Tamara have filed separate respondent's briefs.

## DISCUSSION

██

¶ 8. The sole issue is whether an order of adoption under WIS. STAT. § 48.92 extinguishes a preexisting child support arrearage. On a threshold basis, the County and Tamara raise two procedural arguments. First, they exhort us to disregard Randolph's brief in its entirety for its failure to comply with proper briefing rules. Randolph's pro se brief indeed is lacking in several regards: the fact section bears no record citations, the argument is largely unsupported by legal authority, and it is without the required appendix. *See*

WIS. STAT. RULE 809.19(1) and (2). Nevertheless, we opt not to dismiss the appeal outright for these shortcomings, although we could. *See* WIS. STAT. RULE 809.83(2).

■

¶ 9.   Second, both Tamara and the County contend that Randolph's claim is barred by the law of claim preclusion[8] since Randolph raised this same challenge as early as 1992. *See Max T. v. Carol O.*, 174 Wis. 2d 352, 355, 497 N.W.2d 740 (Ct. App. 1993). The doctrine of claim preclusion is designed to balance the need to bring litigation to conclusion, against each party's right to have a judicial determination made as to his or her contentions. *Shanee Y. v. Ronnie J.*, 2004 WI App 58, ¶ 18, 271 Wis. 2d 242, 677 N.W.2d 684. Randolph responds that his claim is not barred because his argument under the adoption statute was never raised until these proceedings in this case.

■

¶ 10.   We choose not to decide this case on claim preclusion grounds. In Wisconsin, the law of claim preclusion is not an ironclad rule to be doggedly applied, even if literally appropriate, without regard to countervailing considerations. *Patzer v. Board of Regents*, 763 F.2d 851, 856 (7th Cir. 1985). "Claim preclusion may be disregarded in appropriate circumstances when the policies favoring preclusion of a second action are trumped by other significant policies." *Sopha v. Owens-Corning Fiberglas Corp.*, 230 Wis. 2d 212, 236, 601 N.W.2d 627 (1999). Just as this court generally does

---

[8] Actually, the respondents' argument invokes the phrase "res judicata," not "claim preclusion." We use the phrase "claim preclusion" since that term now replaces "res judicata." *See Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 550, 525 N.W.2d 723 (1995).

not consider moot issues, it is within our authority to consider them when, for example, the issue has great public importance, the decision is needed to guide the circuit courts, or where the issue is likely of repetition, yet evades review. *State ex rel. Olson v. Litscher*, 2000 WI App 61, ¶ 3, 233 Wis. 2d 685, 608 N.W.2d 425.

¶ 11.   Here, the court commissioner acknowledged that it sees "a lot of cases like [Randolph's]," and the circuit court observed that it was surprised that "there aren't more reported cases" on this issue. Therefore, assuming that claim preclusion applies, we nonetheless choose to address Randolph's argument on the merits. We do so:   (1) because the issue is one of first impression, (2) because it is likely to recur, (3) because of the nature and importance of the rights and obligations implicated, and (4) although to a lesser degree, because of Randolph's pro se status.

¶ 12.   Randolph frames the issue as whether, under WIS. STAT. § 48.92(2), child support arrearages are a legal consequence of the parent-child relationship such that the statute "obliterates his arrears." In response, Tamara first asserts that Randolph's reading of the statute unlawfully impairs the agreement that she and Randolph made on the question of child support at the time of their divorce. Tamara directs us to nothing, however, indicating that she raised this issue below or to any trial court ruling on this issue. Given its turn, the County does not address this matter in its separate response brief. We have searched the record. We discovered only a passing remark by the court that "the Federal Constitution provides that nothing in any . . . federal or state law can impair the obligation of a contract," with no follow-up by any party, Tamara in

120

particular. Accordingly, we decline Tamara's invitation to entertain the impairment of contracts question.[9]

¶ 13. Therefore, we move to the merits. Randolph's argument focuses on Wis. Stat. § 48.92. We recite the relevant provisions.

> **Effect of adoption. (1)** After the order of adoption is entered the relation of parent and child and all the rights, duties and other legal consequences of the natural relation of child and parent thereafter exists between the adopted person and the adoptive parents.
>
> **(2)** After the order of adoption is entered the relationship of parent and child between the adopted person and the adopted person's birth parents . . . shall be completely altered and all the rights, duties and other legal consequences of the relationship shall cease to exist.

¶ 14. As noted, Randolph relies on Wis. Stat. § 48.92(2). He complains that the trial court ignored this provision, instead confining its discussion to Wis. Stat. § 48.40(2),[10] "the TPR statute," which provides that the termination of parental rights permanently severs all "rights, powers, privileges, immunities, duties and obligations existing between parent and child."

---

[9] Tamara also argues that Randolph's interpretation of the statute amounts to an ex post facto law. Here again, it does not appear that Tamara raised this issue in the trial court, and the trial court's rulings do not address any such argument. Therefore, we also decline to address this argument.

[10] Randolph based his May 29, 1993 motion seeking to end his support obligation on Wis. Stat. §§ 48.40 and 48.43(2). Section 48.43(2) provides: "An order terminating parental rights permanently severs all legal rights and duties between the parent and the child."

¶ 15.   We summarily reject Randolph's argument that the trial court ignored his argument under the adoption statute. The court expressly addressed this argument and rejected it, summarizing with approval the holding from a foreign case in the following words:   "[T]he adoption had no effect on the previously-accrued arrearages."

¶ 16.   Moving to the balance of Randolph's argument, he acknowledges that the wording of the TPR statute, Wis. Stat. § 48.40(2), does not erase his support arrears obligation. Instead, his argument now focuses on the different language of the adoption statute, Wis. Stat. § 48.92(2). He argues that the language "all the . . . legal consequences of the relationship shall cease to exist" unambiguously commands the cancellation of his child support arrearage. He contends that the creation of related but not identically worded statutes demonstrates a legislative intent to treat the effect of an adoption differently than that of a TPR because of, in his view, the dissimilar ways that the "vast majority" of TPRs come about, as compared to adoptions.

■

¶ 17.   Randolph's argument requires us to construe the relevant portions of Wis. Stat. § 48.92 and apply them to the undisputed facts of this case. That exercise presents a question of law that we review de novo. *Schauer v. Baker*, 2004 WI App 41, ¶ 10, 270 Wis. 2d 714, 678 N.W.2d 258. When interpreting statutes, our goal is to determine and give effect to the meaning of the statute. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. We look first to the language of the statute because we "assume that the legislature's intent is expressed in the statutory language." *Id.* If the language

clearly and unambiguously sets forth the legislative intent, we apply that language to the facts at hand. *Schauer*, 270 Wis. 2d 714, ¶ 10. And because context is important to meaning, we interpret the statutory language not in isolation, but as part of a whole. *Kalal*, 271 Wis. 2d 633, ¶ 46.

¶ 18.  Randolph submits that Wis. Stat. § 48.92(2) clearly sustains his position. He reasons as follows:   child support arrears are a legal consequence of the parent-child relationship; § 48.92(2) provides that after the order of adoption "all the . . . legal consequences of the relationship shall cease to exist"; therefore, his support obligation was extinguished upon the order of adoption. Tamara and the County also contend the statute is clear. They, however, assert that when read in its entirety as part of a cohesive whole, the statute addresses the cessation of legal consequences from the time of the adoption order and "thereafter." *See* § 48.92(1).

¶ 19.  Although the parties disagree as to its meaning, none of them argue that the statute is ambiguous. We disagree. The test of ambiguity is whether the statutory language reasonably gives rise to different meanings. *Kalal*, 271 Wis. 2d 633, ¶ 47. Despite the parties' shared belief that the statute is clear, we consider the statute to be ambiguous because the wording of the statute reasonably allows for the parties' differing interpretations.

¶ 20.  That said, we reject Randolph's interpretation. The Achilles' heel of Randolph's argument is that it looks to Wis. Stat. § 48.92(2) in isolation, thus ignoring significant and informative language in § 48.92(1). As a result, Randolph arrives at an interpretation we

think contrary to the overarching purpose of § 48.92 viewed as a whole and of WIS. STAT. ch. 48, as expressed in WIS. STAT. § 48.01.

¶ 21.   WISCONSIN STAT. § 48.92 is entitled "Effect of adoption." Subsection (1) establishes a "relation of parent and child" between the adoptive parent and the adoptee; subsec. (2) "completely alter[s]" the relationship between the adoptee and his or her birth parent(s). The change takes effect "[a]fter the order of adoption is entered" and, as subsec. (1) plainly states, "thereafter exists." The word "thereafter" casts the entire statute in a forward-looking light, marking the point in time at which, *from then on,* there exists a new parent-child relation and there ceases to exist the prior parent-child relationship. "Thereafter" plainly contemplates a going forward, not a reaching back as Randolph urges. We may not either disregard the word's clear implication or limit it to subsec. (1) because we must give reasonable effect to every word of a statute and read statutory language in context, as part of a whole. *See Kalal,* 271 Wis. 2d 633, ¶ 46.

¶ 22.   Randolph's argument fails for still another reason. WISCONSIN STAT. § 48.92(2) addresses the effect of adoption on a birth parent's relationship with his or her biological child, not with the former spouse. As the State and the circuit court observed at the de novo hearing, while child support is ordered to benefit the child, it actually is an obligation owed to the recipient parent, here Tamara. The original child support order, in fact, directs Randolph to pay Tamara.

¶ 23.   Simply stated, Randolph's reading of WIS. STAT. § 48.92(2) cannot be right. The literal construction he advocates weighs in the interest of a nonpaying

parent and runs afoul of the express purpose of WIS. STAT. ch. 48, which is to ensure that "the best interests of the child . . . shall always be of paramount consideration." WIS. STAT. § 48.01(1). Statutory sections found in the same chapter must be read *in pari materia* and harmonized so as to implement the chapter's goals and policy. *See Georgina G. v. Terry M.*, 184 Wis. 2d 492, 512, 516 N.W.2d 678 (1994). We reject interpretations which lead to an unreasonable result not reflective of the legislature's intent, *see State v. Jennings*, 2003 WI 10, ¶ 11, 259 Wis. 2d 523, 657 N.W.2d 393, because we must favor the purpose of the whole act over a construction that would defeat the act's manifest object. *See Scott A. v. Garth J.*, 221 Wis. 2d 781, 786, 586 N.W.2d 21 (Ct. App. 1998).

¶ 24.  With these principles in mind, we conclude that Randolph's focus on only subsec. (2) of WIS. STAT. § 48.92 and the term "legal consequences" is too restrictive. Instead, we hold that the prospective view of the statute does not permit the extinguishing of Randolph's child support obligations that accrued before his parental rights were terminated.

¶ 25.  Our reading of WIS. STAT. § 48.92 finds explicit support elsewhere. AMERICAN JURISPRUDENCE (Second), for example, states the general rule to be that the adoption of a minor child terminates all legal relations between the minor and his or her natural parents, so that *thereafter* the natural parents are under no obligation to support the adopted child but are relieved from legal responsibility for it. 2 AM. JUR. 2D *Adoption* § 164. This express admonition follows:

> • **Caution:** Signing a consent to adoption will not, by itself, relieve a parent of his or her child support obligations. Moreover, *a decree of adoption does not*

*operate in a retroactive manner to relieve the payor spouse of all past-due child support arrearages not reduced to judgment prior to the adoption.*

*Id.* (footnotes omitted; emphasis added).

¶ 26.   We also recognize a Kansas Supreme Court decision which the circuit court referenced at the de novo hearing.[11] In *Michels v. Weingartner*, 864 P.2d 1189 (Kan. 1993), the court held that past due child support payments are not extinguished by an adoption decree. *Id.* at 1193. There, the birth parents divorced and the mother obtained custody of their minor son. *Id.* at 1190. She remarried nine years later, and her new husband later petitioned to adopt the child without obtaining the birth father's consent based on the birth father's failure to either pay child support or keep in contact with the boy. *Id.* at 1190–91. The supreme court affirmed the lower court's rulings that child support judgments accruing preadoption were enforceable, holding that child support payments vest as they accrue because they become final judgments on the dates they become due and unpaid. *Id.* at 1193.

## CONCLUSION

¶ 27.   We hold that, when read as part of a cohesive whole, WIS. STAT. § 48.92(2) does not relieve a birth parent of the obligation to pay child support arrearages for which he or she became liable before such parent's parental rights were terminated. The statute contemplates a point in time at which, from then on, the legal status of the adoptive parent(s), birth parent(s) and

---

[11] We may consider persuasive authority from other jurisdictions because this is an issue of first impression. *See Strozinsky v. School Dist. of Brown Deer*, 2000 WI 97, ¶ 67, 237 Wis. 2d 19, 614 N.W.2d 443.

adopted child are completely altered. It does not offer relief for a child support obligation incurred prior to the termination of the obligor parent's parental rights.

*By the Court.*—Order affirmed.