Vearl MILLER, Wanda Miller and Ross, Dayne
and Wade Miller, by Guardian ad Litem
Robert Mubarak, Plaintiffs-Appellants-Cross-
Respondents-Cross Petitioners,

v.

The HANOVER INSURANCE COMPANY and Massachu-
setts Bay Insurance Company, Defendants,

ZURICH AMERICAN INSURANCE COMPANY, Defendant-
Respondent-Cross-Appellant-Petitioner.

Supreme Court

*No. 2008AP1494. Oral argument April 15, 2010.
—Decided July 13, 2010*

2010 WI 75

(Also reported in 785 N.W.2d 493.)

640

For the defendant-respondent-cross-appellant-petitioner there were briefs by *Craig W. Nelson and Nelson, Connell, Conrad, Tallmadge & Slein, S.C.,* Waukesha, and *Lester A. Pines, Kira E. Loehr, and Cullen Weston Pines & Bach LLP,* Madison, and oral argument by *Lester A. Pines.*

For the plaintiffs-appellants-cross-respondents-cross petitioners there were briefs by *Jay A. Urban, Jennifer M. Wilson, and Urban & Taylor S.C.,* Milwawukee; *Kent A. Tess-Mattner and Schmidt, Rupke, Tess-Mattner & Fox, S.C.,* Brookfield; and *Robert J. Mubarak and Mubarak, Radcliffe & Berry SC,* Tomah, and oral argument by *Jay A. Urban.*

An amicus curiae brief was filed by *James A. Friedman, Katherine Stadler,* and *Godfrey & Kahn, S.C.,* Madison, on behalf of the Wisconsin Insurance Alliance.

¶ 1. PATIENCE DRAKE ROGGENSACK, J. We review a decision of the court of appeals[1] affirming the circuit court's order[2] denying Zurich American Insurance Company's (Zurich) motion for relief from a de-

---

[1] *Miller v. Hanover Ins. Co.,* No. 2008AP1494, unpublished slip op., ¶ 13 (Wis. Ct. App. July 30, 2009).

[2] The Honorable Michael J. McAlpine of Monroe County presided.

fault judgment and limiting Vearl Miller, Wanda Miller and Ross, Dayne and Wade Miller's (collectively, Miller) damages to $2 million. The following issues are presented for our review: (1) whether the circuit court properly entered a default judgment against Zurich for its failure to timely answer Miller's amended complaint; (2) whether the circuit court erroneously exercised its discretion in denying Zurich's motion for relief from the default judgment, pursuant to Wis. Stat. § 806.07(1)(h) (2007–08);[3] and (3) whether the circuit court properly limited Miller's damages to $2 million.

¶ 2.   We conclude that the circuit court erroneously exercised its discretion in denying Zurich's motion for relief from the $2 million default judgment. Because we so conclude, we need not decide whether the circuit court properly entered the default judgment against Zurich or whether the circuit court properly limited Miller's damages to $2 million. Accordingly, we reverse the court of appeals decision affirming the circuit court's denial of Zurich's motion for relief from judgment and remand to the circuit court to vacate the default judgment.

## I. BACKGROUND

¶ 3.   The facts of this case are lengthy and complicated. On August 11, 2003, Vearl Miller (Vearl) was injured in a car accident in the course of his employment. While operating a vehicle owned by General Parts, Inc. (General Parts), the parent company of Vearl's employer, Car Quest, Vearl was struck by another vehicle. James Smith, Jr. (Smith) was the driver of that vehicle. As a result of the accident, Vearl

[3] All further references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

suffered traumatic injuries, including permanent paralysis from the waist down.

¶ 4. On June 23, 2004, Vearl and his wife, Wanda Miller (Wanda), filed a complaint, alleging Smith's negligence. The complaint claimed damages for Vearl's injuries and for Wanda's loss of consortium and society and companionship. The complaint named four defendants: (1) Smith; (2) Smith's insurer, Acuity Insurance (Acuity); (3) Zurich, as General Parts' worker's compensation insurer; and (4) the Hanover Insurance Company (Hanover), as Vearl's personal underinsured motorist insurer. Zurich was named as a defendant because it had a statutory subrogation interest in any tort recovery.

¶ 5. On July 19, 2004, Zurich timely answered the complaint, by and through its attorney, James Ratzel (Ratzel). Zurich affirmatively asserted a subrogation interest "to the full extent of any worker's compensation benefits that have been paid or will be paid to or on behalf of the plaintiff Vearl Miller."

¶ 6. On November 11, 2004, Miller's counsel wrote a letter to Ratzel, which stated in part:

> My understanding is that you are representing Zurich in a subrogation capacity, but are you also counsel on the potential [underinsured motorist] claim? If so, kindly provide me with any and all certified policies of possible [underinsured motorist] coverage, including umbrella and [commercial general liability] policies, in effect for Vearl Miller through Car Quest or General Parts, Inc. at the time of this accident. If not, please forward this to the appropriate counsel for Zurich. Actually, we are most interested in all [underinsured motorist] policies in effect for Mr. Miller as an employee driver.

¶ 7. Ratzel responded to the letter from Miller's counsel on November 15, 2004. The letter stated:

> I understand that you are appearing as co-counsel for the plaintiffs in this matter. In response to your letter of November 11, 2004, I only represent Zurich to the extent of the worker's compensation interest. I don't know if the issue of [underinsured motorist] coverage has ever been explored. In my discussions, I am not aware of anyone raising that issue and as such, I cannot state one way or another whether there is [underinsured motorist] coverage. As to the position of Acuity, they have offered their policy limits from day one and I believe that the only thing that is taking place right now is obtaining some additional proceeds from the tortfeasor Smith.
>
> Please contact me with any questions or comments. As you are aware, my worker's compensation interest attaches to the policy limits of Acuity but would not come into play as it pertains to any [underinsured motorist] claim. Thank you.

¶ 8. Miller's counsel corresponded with GAB Robins Risk Management Services, Inc. (GAB Robins), a third-party claims administrator for General Parts, on December 13, 2004, and December 27, 2004, regarding obtaining certified copies of any insurance policies containing underinsured motorist coverage Zurich had issued to Car Quest or General Parts. On January 6, 2005, Attorney Timothy Lyons (Lyons) sent a letter to Miller's counsel informing him, among other things, that his "law firm [had] been retained by GAB Robins Risk Management Services, Inc., with regard to [Vearl Miller's] claim." Lyons again corresponded with Miller's counsel on February 1, 2005. This letter was to inform Miller's counsel that while Zurich had issued General Parts a commercial automobile insurance policy, it was

GAB Robin's position that "there is no [underinsured motorist] coverage" in the commercial automobile policy covering Miller because General Parts rejected Zurich's offer of such coverage. Enclosed with the letter was "the form signed by the representative of General Parts, Inc. rejecting [underinsured motorist] coverage."[4]

¶ 9. Acuity agreed to pay its policy limit of $100,000, and Smith contributed $2,000 to a settlement fund. A dispute arose over how the funds were to be distributed. On January 18, 2005, Zurich, through Ratzel, filed a motion for approval of third party settlement proposing a distribution.

¶ 10. Eventually, the parties stipulated to an agreed on distribution of the settlement proceeds. Miller's counsel filed a letter in the circuit court, dated February 10, 2005, copying all counsel of record, including Ratzel, asking the court to sign and approve a stipulation and order for disbursement of the settlement proceeds and a stipulation and order for partial dismissal of parties. All counsel of record, including Ratzel for Zurich, signed the stipulations. On February 11, 2005, the court entered both orders.

---

[4] Contrary to the concurrence's suggestion that Lyons "appeared to be representing Zurich's [underinsured motorist] interest," concurrence, ¶ 93, the record conclusively establishes that Lyons did not represent Zurich in any capacity. In an affidavit, Lyons averred:

> I am the attorney for GAB Robins . . . . [] I have never entered an appearance in this case, as neither GAB Robins nor General Parts/CarQuest have been a party to this case. [] I have not represented Zurich in this case. [] I have never personally communicated in any way with any representative of Zurich in connection with this case.

Accordingly, we disagree with the concurrence's assertion that Lyons represented Zurich on the underinsured motorist claim.

¶ 11. The order for partial dismissal stated "that only the defendants James L. Smith, Jr. and Acuity Insurance are hereby dismissed as defendants in the above matter with prejudice and without costs." With respect to Zurich and Hanover as the remaining defendants, Miller's February 10, 2005 letter to the court explained:

> We are keeping this case open as to all other named defendants. There are potentially other claims involving these defendants and other issues of [underinsured motorist insurance], insurance agent errors and omissions and/or medical malpractice. Thank you.

¶ 12. In November 2005, the circuit court issued a notice of hearing setting a scheduling conference for January 10, 2006. The notice was distributed to Miller's counsel, Hanover's counsel and to Zurich. The notice was not distributed to Ratzel, and he did not attend the scheduling conference.

¶ 13. On January 10, 2006, the day of the scheduling conference, Miller's counsel sent a letter to the circuit court informing the court of the status of the case. The letter stated: "Kindly keep this case open for future proceedings, and we will expect to have additional motions and/or pleadings in the case within the next couple of months." A copy of this letter was sent to Miller's co-counsel and Hanover's counsel. Neither Zurich nor Ratzel received this letter. The judge made the following handwritten notations on a copy of the January 10, 2006 letter: "request approved," which was circled, "please advise" and "please file." A copy of the letter with the judge's notations was sent to Miller's co-counsel and Hanover's counsel; neither Zurich nor Ratzel received a copy.

¶ 14. Miller's counsel filed with the circuit court a letter dated June 5, 2006, enclosing an amended summons and complaint, which were filed on June 7, 2006. The letter informed the court of the following:

> Enclosed is our Amended Summons and Complaint making claims for additional coverage and/or reducing clause issues on those, as well as other contractual and extra-contractual claims for damages, including bad faith. Two of these insurers are new parties to this action, and all will be served via their respective registered agents.

The amended complaint named Massachusetts Bay Insurance Company (Massachusetts Bay), Zurich and Hanover as defendants and claimed, inter alia, that Zurich's commercial automobile insurance policy provided Miller, as an insured, underinsured motorist coverage. Contrary to the above-quoted letter, the amended complaint added only one new party because Zurich and Hanover were never dismissed as defendants.[5] A copy of this letter was sent to Miller's co-counsel, Hanover's counsel and Lyons; neither Ratzel nor Zurich received a copy.

---

[5] At various times throughout this proceeding, Miller's counsel has argued that Zurich was dismissed from the case after the worker's compensation claim was resolved, citing to an order for dismissal and disbursements pursuant to Wis. Stat. § 102.29 entered by the circuit court on January 17, 2006. This order enumerated the same distribution of settlement proceeds as the court's February 11, 2005 order for disbursement of settlement proceeds and stated that "after the provisions of the above agreement have been effectuated, the above-entitled action shall be dismissed as it pertains to the defendants with prejudice and without costs and that an Order to that effect may be entered without notice." Attached to the order for dismissal is a note dated January 19, 2006, which states "Case remains open for future proceedings."

¶ 15. On June 12, 2006, the circuit court issued a notice of hearing setting a scheduling conference for June 30, 2006. The notice was distributed to Miller's counsel, Hanover's counsel, Massachusetts Bay and Zurich. The notice was not distributed to Ratzel.

¶ 16. On June 20, 2006, Miller served the amended summons and complaint on Zurich through its registered agent, Stanley Lowe. The amended summons and complaint were never served on Ratzel. On June 22, 2006, the amended summons and complaint

This order was mistakenly entered by the circuit court and was not sent to the parties or to counsel. Indeed, at the hearing on Zurich's motion for extension of time to file its answer and Miller's motion for default judgment, the following exchange occurred:

> [Court]: As I indicated the other day, [the January 17, 2006 order] obviously was in error and that order that dismissed Zurich with prejudice in error is vacated.
>
> . . .
>
> [Attorney Craig Nelson for Zurich]: With respect to the Court's order that the January 17, 2006, order is vacated, do I—do I understand properly that that order is vacated as of today?
>
> [Court]: Well, actually it was mistakenly entered and the order is an order that really I view as a nullity since it was mistakenly entered . . . . And I also don't believe . . . that that order was ever provided to either Mr. Ratzel or Mr. Mubarak[, Miller's co-counsel,] or anybody else for that matter. So I—and the reason that I say that is that I don't know that there would have been anyone that would have therefore relied on that order.

The circuit court's order entering default judgment against Zurich confirmed the court's comments at the hearing. The order stated that the January 17, 2006 order for dismissal "was not distributed to counsel or the parties[,] . . . was made in error and is vacated." Given that the court vacated the January 17, 2006 order dismissing all defendants from the action and that it was not distributed to any of the parties, the order does not impact our decision.

651

was forwarded to Caroline Fountain (Fountain), a Zurich employee who is responsible for receiving suit papers from Zurich's registered agent and forwarding them to the appropriate claim handler. In an affidavit, Fountain averred that she mistakenly believed the amended summons and complaint were duplicates of a summons and complaint she had received six days earlier, which she forwarded to GAB Robins. The summons and complaint involved a medical negligence lawsuit the Millers commenced in the same court arising out of the same accident, naming Zurich as a subrogated defendant. Because Fountain believed the amended summons and complaint had already been processed, she did not forward the pleadings to GAB Robins as she normally did.

¶ 17.   On June 30, 2006, the circuit court issued a notice of hearing setting a scheduling conference for August 28, 2006. The notice was distributed to Miller's counsel, Hanover's counsel, Massachusetts Bay and Zurich.

¶ 18.   Hanover and Massachusetts Bay, represented by the same counsel, timely answered the amended complaint on August 4, 2006. Because Zurich failed to timely answer the amended complaint, on September 1, 2006, Miller filed a motion for default judgment against Zurich. A copy of this motion was sent to Miller's co-counsel, counsel for Massachusetts Bay and Hanover, Zurich and Lyons.

¶ 19.   On September 21, 2006, Attorney Craig Nelson (Nelson) answered Miller's amended complaint on behalf of Zurich. In its answer, Zurich affirmatively alleged that the policy it issued to General Parts did not include any underinsured motorist coverage. On September 26, 2006, Zurich also filed a motion for extension of time to answer Miller's amended complaint. Zurich mounted several arguments in support of its motion.

First, Zurich argued that the amended summons and complaint were improperly served because, pursuant to Wis. Stat. § 801.14(2), service must have been made on Ratzel, Zurich's attorney of record. Alternatively, Zurich contended that its "failure to act was the result of excusable neglect," citing Wis. Stat. § 801.15(2)(a). Finally, Zurich argued that the circuit court should deny the motion for default judgment because, if granted, the court would be compelled to re-open the judgment under Wis. Stat. § 806.07(1)(a) and (h).[6] In response, Miller filed a motion to strike Zurich's answer to the amended complaint.

¶ 20. On December 1, 2006, the circuit court denied Zurich's motion for extension of time and granted Miller's motion to strike Zurich's answer and motion for default judgment. The court's order for default judgment against Zurich concluded that Miller "properly served the Amended Summons and Complaint on Zurich pursuant to Wis. Stat. § 801.14 and Wisconsin Law on its registered agent, although Attorney Ratzel remained as counsel of record for Zurich." The circuit court further concluded that Zurich's failure to timely answer was not the result of excusable neglect, but did not address whether "[a]ny other reasons justif[ied] relief" from the default judgment, Wis. Stat. § 806.07(1)(h).

---

[6] Wisconsin Stat. § 806.07(1) provides in relevant part:

On motion and upon such terms as are just, the court, subject to subs. (2) and (3), may relieve a party or legal representative from a judgment, order or stipulation for the following reasons:

(a) Mistake, inadvertence, surprise, or excusable neglect;

. . .

(h) Any other reasons justifying relief from the operation of the judgment.

¶ 21.   Zurich filed a petition seeking leave to appeal the circuit court's non-final order for default judgment against it. The court of appeals denied Zurich's petition.

¶ 22.   Zurich moved the circuit court for reconsideration. In support of its motion, Zurich submitted an affidavit of Nelson, which attached 18 documents, including correspondence and pleadings, not sent to or served on Ratzel. Moreover, Nelson averred that after consulting with the Monroe County Clerk of Court's office, "it appears that Attorney Ratzel was neither added to [nor] deleted from the CCAP system, as counsel of record for Zurich, at any time before December 22, 2006." Attached to the affidavit was a copy of a CCAP entry for this proceeding listing all attorneys of record, for all present and dismissed parties, except Ratzel.[7] The circuit court denied Zurich's motion.

¶ 23.   Zurich again petitioned the court of appeals seeking leave to appeal the circuit court's non-final order denying Zurich's motion for reconsideration, or, alternatively, a supervisory writ of mandamus directing the circuit court to grant its reconsideration motion. The court of appeals denied both petitions.

¶ 24.   Zurich then moved for relief from the default judgment pursuant to Wis. Stat. § 806.07(1)(h), which the circuit court denied.

---

[7] A search of the CCAP database on June 1, 2010, lists Ratzel as an attorney for Zurich. CCAP indicates that Ratzel entered the action as Zurich's attorney on December 22, 2006, and withdrew on November 26, 2007. CCAP lists Craig Nelson as Zurich's attorney and indicates he entered the action on September 22, 2006. No attorney for Zurich is listed prior to September 22, 2006. *See* Wisconsin Circuit Court Access, http://wcca.wicourts.gov/simpleCaseSearch.xsl (select "Monroe County" from drop down menu, enter 2004CV212 in "case number" box and click "search") (last visited June 23, 2010).

¶ 25. After extensive discovery, the circuit court conducted a hearing on damages. The circuit court awarded $9,666,314.98 plus costs to Miller. The court then issued an order limiting the amount awarded at the damages hearing to $2 million plus costs because Miller's amended complaint sought $2 million in underinsured motorist coverage and prorating the damages between each of the plaintiffs.

¶ 26. Zurich appealed the circuit court's order granting default judgment, denying it relief from the judgment and the damages award. *Miller v. Hanover Ins. Co.*, No. 2008AP1494, unpublished slip op., ¶ 13 (Wis. Ct. App. July 30, 2009). Miller cross-appealed from the circuit court's order limiting its damages to $2 million and prorating the damage award. *Id.*

¶ 27. Regarding Zurich's appeal, the court of appeals concluded that the circuit court properly granted default judgment to Miller and properly denied relief from the judgment. *Id.*, ¶ 3. On Miller's cross-appeal, the court of appeals concluded that because Miller's amended complaint alleged Zurich's policy limit was $2 million, Miller is limited to recovering that amount. *Id.*, ¶ 44. The court of appeals reversed the circuit court's order prorating the damages award. *Id.*, ¶ 46.

¶ 28. Zurich petitioned for review, and Miller cross-petitioned. We granted review and now reverse.

## II.  DISCUSSION

### A.  Standard of Review

■■

¶ 29. "Whether to grant relief from judgment under Wis. Stat. § 806.07(1)(h) is a decision within the discretion of the circuit court," which we review under

the erroneous exercise of discretion standard. *Sukala v. Heritage Mut. Ins. Co.*, 2005 WI 83, ¶ 8, 282 Wis. 2d 46, 698 N.W.2d 610 (citing *Franke v. Franke,* 2004 WI 8, ¶ 54, 268 Wis. 2d 360, 674 N.W.2d 832). "A circuit court does not erroneously exercise its discretion if its decision is based on the facts of record and on the application of a correct legal standard." *Larry v. Harris,* 2008 WI 81, ¶ 15, 311 Wis. 2d 326, 752 N.W.2d 279 (citing *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981)).

■■
¶ 30.   "We will not reverse a discretionary determination by the [circuit] court if the record shows that discretion was in fact exercised and we can perceive a reasonable basis for the court's decision." *Sukala,* 282 Wis. 2d 46, ¶ 8 (further quotation omitted). We generally look for reasons to sustain a circuit court's discretionary determination. *Id.* However, where the circuit court sets forth no reasons or inadequate reasons for its decision, we will independently review the record to determine whether the circuit court properly exercised its discretion and whether the facts provide support for the court's decision. *Connor v. Connor,* 2001 WI 49, ¶ 38, 243 Wis. 2d 279, 627 N.W.2d 182.

B.   General Principles of Wis. Stat. § 806.07(1)(h)

■■
¶ 31.   A circuit court's authority to vacate a default judgment derives from Wis. Stat. § 806.07. *Larry,* 311 Wis. 2d 326, ¶ 17. "Section 806.07(1) lists conditions under which a circuit court may exercise its discretion and open a default judgment." *Id.* In exercising its discretion in deciding whether to vacate a default judgment, the circuit court must be cognizant of three

general considerations. *Dugenske v. Dugenske,* 80 Wis. 2d 64, 68, 257 N.W.2d 865 (1977). First, § 806.07(1) is remedial in nature and should be liberally construed. *See id.*[8] Second, "the law prefers, whenever reasonably possible, to afford litigants a day in court and a trial on the issues." *Id.* Third, "default judgments are regarded with particular disfavor." *Id.* Indeed, on this last point we have stated that "default judgment is the ultimate sanction." *Split Rock Hardwoods, Inc. v. Lumber Liquidators, Inc.,* 2002 WI 66, ¶ 64, 253 Wis. 2d 238, 646 N.W.2d 19. Consequently, default judgments ought to attract close scrutiny on appellate review. *Id.*

¶ 32. Paragraphs (a)–(g) describe specific circumstances for which relief may be granted; para. (h) "is a 'catch-all' provision allowing relief from judgment for 'any other reasons justifying relief.'" *Sukala,* 282 Wis. 2d 46, ¶ 9. In the instant action, Zurich contends that the circuit court erroneously exercised its discretion in refusing to open the default judgment under Wis. Stat. § 806.07(1)(h).

¶ 33. "Paragraph (1)(h) 'gives the trial court broad discretionary authority and invokes the pure equity power of the court.'" *Id.* (quoting *Mullen v. Coolong,* 153 Wis. 2d 401, 407, 451 N.W.2d 412 (1990)). Para. (1)(h) "is to be liberally construed to provide relief from a judgment whenever appropriate to accomplish justice." *Shanee Y. v. Ronnie J.,* 2004 WI App 58, ¶ 11, 271 Wis. 2d 242, 677 N.W.2d 684. However, the court should not interpret para. (1)(h) so broadly as to erode the

---

[8] *Dugenske v. Dugenske* cites to Wis. Stat. § 269.46, which was "replaced by section 806.07, Stats., [and] contains a similar provision for relief from judgments." *Dugenske,* 80 Wis. 2d 64, 67 & n.1, 257 N.W.2d 865 (1977).

concept of finality, nor should it interpret it so narrowly that it no longer provides relief for truly deserving claimants. *State ex rel. M.L.B. v. D.G.H.,* 122 Wis. 2d 536, 552, 363 N.W.2d 419 (1985). "In short, we balance the competing values of finality and fairness" in deciding the motion. *Connor,* 243 Wis. 2d 279, ¶ 27.

¶ 34.   "To determine whether a party is entitled to review under Wis. Stat. § 806.07(1)(h), the circuit court should examine the allegations accompanying the motion with the assumption that all assertions contained therein are true." *Sukala,* 282 Wis. 2d 46, ¶ 10 (citing *M.L.B.,* 122 Wis. 2d at 553). If the facts alleged constitute extraordinary circumstances such that relief may be warranted under para. (1)(h), a hearing must be held on the truth of the allegations. *Id.* After determining the truth of the allegations and considering any other factors bearing on the equities of the case, the circuit court exercises its discretion to decide whether to grant relief from the judgment, order or stipulation. *Id.* The party seeking relief bears the burden to prove that extraordinary circumstances exist. *Id.,* ¶ 12 (citing *Connor,* 243 Wis. 2d 279, ¶ 28).

¶ 35.   A court appropriately grants relief from a default judgment under para. (1)(h) when extraordinary circumstances are present justifying relief in the interest of justice. *M.L.B.,* 122 Wis. 2d at 553. "[E]xtraordinary circumstances are those where 'the sanctity of the final judgment is outweighed by the incessant command of the court's conscience that justice be done in light of *all* the facts.' " *Sukala,* 282 Wis. 2d 46, ¶ 12 (quoting *Mogged v. Mogged,* 2000 WI App 39, ¶ 13, 233 Wis. 2d 90, 607 N.W.2d 662) (further internal quotations and citations omitted).

¶ 36.   In exercising its discretion in determining whether it should grant relief from a judgment, the circuit court "must consider a wide range of factors" in determining whether extraordinary circumstances are present, always keeping in mind the competing interests of finality of judgments and fairness in the resolution of the dispute. *M.L.B.*, 122 Wis. 2d at 552; *Sukala,* 282 Wis. 2d 46, ¶ 11. We have explained that these factors include, but are not limited to, the following:

> "whether the judgment was the result of the conscientious, deliberate and well-informed choice of the claimant; whether the claimant received the effective assistance of counsel; whether relief is sought from a judgment in which there has been no judicial consideration of the merits and the interest of deciding the particular case on the merits outweighs the finality of judgments; whether there is a meritorious defense to the claim; and whether there are intervening circumstances making it inequitable to grant relief."

*Sukala,* 282 Wis. 2d 46, ¶ 11 (quoting *M.L.B.,* 122 Wis. 2d at 552–53).

### C.   Application of Wis. Stat. § 806.07(1)(h)

¶ 37.   Zurich argues that the circuit court erroneously exercised its discretion in denying its motion for relief from the default judgment pursuant to Wis. Stat. § 806.07(1)(h). We agree.

¶ 38.   The circuit court held a hearing on Zurich's motion for relief from default judgment. In denying Zurich's motion, the circuit court did not identify the equitable balance it was to apply or the relevant factors it was to consider when deciding a motion under Wis.

Stat. § 806.07(1)(h). The circuit court reiterated its interpretation of Wis. Stat. § 801.14(2) and that, in its view, Miller properly served the amended summons and complaint on Zurich. The extent of the circuit court's consideration of equitable principles was as follows:

> [Court]:   I believe that when the default judgment was granted to the plaintiff that the law said to me that I have to take the averments in the complaint as being correct; and although there is a claim that this is not something that is done in the interest of justice, I'm aware that there is at least one other case where the coverage issue, although there was some coverage, was not an issue that the Court then was able to deal with.
>
> And I believe under the circumstances that the unfortunate failure to respond to the amended summons and complaint brings us where we are today. I'm going to deny the motion for relief as has been requested by Zurich.

¶ 39.   Zurich argues that the circuit court failed to consider the appropriate factors in determining whether extraordinary circumstances are present that justify vacating the default judgment. Zurich argues that the circuit court was required to consider a "wide range of factors," including the five "interest of justice" factors set forth in *M.L.B. See supra* ¶ 36. As such, Zurich urges us to engage in an independent review of the record to determine whether relief from the default judgment was appropriate.

¶ 40.   Conversely, in its brief to this court, Miller argued that "the five-factor interests of justice test . . . is not controlling in the context of a default judgment." Citing *Estate of Otto v. Physicians Insurance Co. of Wisconsin,* 2008 WI 78, 311 Wis. 2d 84, 751 N.W.2d 805, and *Hedtcke v. Sentry Insurance Co.,* 109 Wis. 2d 461,

326 N.W.2d 727 (1982), Miller contends that in the context of default judgments, the circuit court need only consider the interest of justice factors upon a finding of excusable neglect. In Miller's view, because the circuit court found that Zurich's failure to answer was not the result of excusable neglect, "[b]ased on *Otto,* no further analysis of the interests of justice was necessary or proper." We disagree.

¶ 41. We conclude that *M.L.B.,* and subsequent cases, unambiguously establish that a circuit court is to consider the five interest of justice factors in determining whether extraordinary circumstances are present under Wis. Stat. § 806.07(1)(h) such that relief from a judgment, including a default judgment, is appropriate. *M.L.B.,* 122 Wis. 2d at 552–53; *see Connor,* 243 Wis. 2d 279, ¶ 41 (applying the five interest of justice factors to determine whether the circuit court properly exercised its discretion in denying relief from default judgment under para. (1)(h)); *Johns v. Cnty. of Oneida,* 201 Wis. 2d 600, 607–08, 549 N.W.2d 269 (Ct. App. 1996) (same). A finding of excusable neglect is not required under the extraordinary circumstances test to obtain relief from a default judgment under para. (1)(h). *See generally M.L.B.,* 122 Wis. 2d 536. We so conclude for several reasons.

¶ 42. First, Miller's reliance on *Otto* and *Hedtcke* is misplaced. Both cases involved a motion to enlarge time under Wis. Stat. § 801.15(2)(a). *Otto,* 311 Wis. 2d 84, ¶¶ 23, 111–20; *Hedtcke,* 109 Wis. 2d at 467. Section 801.15(2)(a) provides that the court may, on motion, order a period of time enlarged. "If the motion is made after the expiration of the specified time, it shall not be granted unless the court finds that the failure to act was the result of *excusable neglect.*" § 801.15(2)(a) (emphasis added).

¶ 43. Miller is correct in pointing out that both *Otto* and *Hedtcke* state that a motion to enlarge time may be granted if the circuit court makes a finding of excusable neglect " 'and if the interests of justice would be served by the enlargement of time.' " *Otto,* 311 Wis. 2d 84, ¶ 114 (quoting *Hedtcke,* 109 Wis. 2d at 468). The requirement that the circuit court make a finding of excusable neglect in order to grant a motion to enlarge time after the expiration of the specified time is derived from the plain language of Wis. Stat. § 801.15(2)(a). However, § 801.15(2)(a) is not relevant here because we are not deciding whether the circuit court properly denied Zurich's motion to enlarge time.

¶ 44. By contrast, Wis. Stat. § 806.07(1)(h), the statute on which Zurich relies for relief from the default judgment, does not by its plain language require a finding of excusable neglect. We further note that because § 806.07(1)(a) permits relief on a finding of "excusable neglect," requiring a finding of excusable neglect under § 806.07(1)(h) would render a portion of para. (1)(a) surplusage. *See State ex rel. Kalal v. Circuit Court for Dane Cnty.,* 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110 ("Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage.").

¶ 45. *Johns* supports our view that a finding of excusable neglect is not required for a court to grant relief under Wis. Stat. § 806.07(1)(h). In *Johns,* the court of appeals was asked to determine whether the circuit court erroneously exercised its discretion when it denied the Johns' motion for default judgment against the County for its failure to timely answer the complaint. *Johns,* 201 Wis. 2d at 602. "Johns contend[ed] that upon a showing of a failure to answer within the statutory period the court is compelled to

grant a default judgment unless the answering party can demonstrate excusable neglect, citing *Hedtcke,* 109 Wis. 2d 461, and *Martin v. Griffin,* 117 Wis. 2d 438, 344 N.W.2d 206 (Ct. App. 1984)."[9] *Johns,* 201 Wis. 2d at 604–05. In rejecting this argument, the court of appeals noted that "the [circuit] court denied the default judgment because it determined that, if granted, the court would subsequently reopen the judgment based on the existence of extraordinary circumstances under [Wis. Stat.] § 806.07(1)(h)." *Id.* at 606. It explained:

> The [circuit] court therefore considered whether it would reopen a default judgment based on § 806.07, and not whether the untimely answer was the result of excusable neglect. Therefore, we conclude that *Hedtcke* and *Martin* are inapposite to the issues before us because they deal with excusable neglect and not whether a [circuit] court could properly deny a default judgment if it determined such a judgment would be reopened under § 806.07.

¶ 46. Finally, Miller argues that "[t]he five-factor test, however, does not comport with default judgments. If a defaulting party can invoke the five-factor test, most of the factors are satisfied simply because the issue was never joined." We agree with Miller's assessment that many of the factors will weigh in favor of a party seeking relief from a default judgment entered for failure to timely answer. However, we do not agree that this supports the argument that the interest of justice factors should not be applied when a party seeks relief from a default judgment; rather, this is consistent with

---

[9] *Martin v. Griffin,* 117 Wis. 2d 438, 442, 344 N.W.2d 206 (Ct. App. 1984), citing *Hedtcke v. Sentry Insurance Co.,* 109 Wis. 2d 461, 468, 326 N.W.2d 727 (1982), determined whether the defendant's "failure to answer was the result of excusable neglect."

our stated policy that default judgments are "the ultimate sanction" and that we regard them "with particular disfavor." *Split Rock,* 253 Wis. 2d 238, ¶ 64; *Dugenske,* 80 Wis. 2d at 68.

¶ 47.  We conclude that the circuit court set forth inadequate reasons for its decision at the motion hearing. As such, we will independently review the record to determine whether there is a basis for the proper exercise of discretion, including whether the record provides a reasonable basis for the court's decision. *See Connor,* 243 Wis. 2d 279, ¶ 38.

¶ 48.  In so doing, we conclude that based on the record in this case, the circuit court's decision was not reasonable in light of the extraordinary circumstances present in this case and the numerous errors, procedural and otherwise, that were generated in part by plaintiff's counsel and the circuit court personnel who were responsible for listing Ratzel as Zurich's attorney of record into the CCAP system, *see supra* ¶ 22 & note 7. Accordingly, we conclude, for the reasons that follow, that the circuit court erroneously exercised its discretion when it denied Zurich's motion for relief from the default judgment.

¶ 49.  We begin our discussion by applying each of the five interest of justice factors to the facts of this case. First, we look to "whether the judgment was the result of the conscientious, deliberate and well-informed choice of the claimant." *Sukala,* 282 Wis. 2d 46, ¶ 11 (quoting *M.L.B.,* 122 Wis. 2d at 552).

¶ 50.  In *Allstate Insurance Co. v. Brunswick Corp.,* the circuit court entered stipulated declaratory judgments dismissing two insurance companies from the underlying action because under then-existing law, their policies did not provide coverage for the claims asserted. *Allstate,* 2007 WI App 221, ¶ 2, 305 Wis. 2d

400, 740 N.W.2d 888. Three years later, we overruled the law the parties relied on in stipulating to the declaratory judgments. *Id.*, ¶ 3. Brunswick sought relief from the judgments under Wis. Stat. § 806.07(1)(h), which the circuit court denied. *Id.* In affirming the circuit court's decision, the court of appeals analyzed the interest of justice factors. *Id.*, ¶¶ 7–15. Applying the first factor, the court noted that Brunswick was presented with the issue of a declaratory judgment to determine whether the policies provided coverage and, upon consideration, Brunswick chose to concede that it could not defend against the coverage questions. *Id.*, ¶ 9. As such, the stipulations were the product of a deliberate, well-informed choice. *See id.*

¶ 51. By contrast, the default judgment in this case was not an issue presented to and considered by Zurich. The default judgment was not affirmatively or voluntarily entered into; rather, it was the result of a collection of procedural irregularities and Zurich's inaction. It is difficult to imagine a situation in which a defendant would welcome a default judgment, especially when $2 million is at stake. Zurich argued that the default judgment occurred through no fault of its own. Zurich contends that Miller's and the court's failure to inform Zurich's counsel of record of proceedings, correspondence and pleadings contributed to the default judgment.

¶ 52. Additionally, Zurich answered the amended complaint 17 days after it received a copy of Miller's motion for default judgment. Throughout the proceedings, Zurich vigorously defended against the default judgment, including filing two petitions in the court of appeals seeking leave to appeal the court's non-final orders and a petition for a supervisory writ of mandamus. The record demonstrates that Zurich's failure to

timely answer the amended complaint was not a deliberate, well-informed choice. Accordingly, this factor weighs in Zurich's favor.

¶ 53. Next, we turn to whether Zurich received the effective assistance of counsel. *Sukala,* 282 Wis. 2d 46, ¶ 11. There was a dispute as to whether Ratzel was counsel of record for Zurich on the underinsured motorist coverage claim in light of his letter to Miller's counsel that he represented Zurich only with respect to the worker's compensation claim, or whether his representation might extend to any subsequent claims.[10] The dispute arose because Ratzel's letter is capable of more than one interpretation. However, we note that when the letter was sent, no underinsured motorist coverage claim had been made, and Ratzel had said that it was his understanding that there was no underinsured motorist coverage available from Zurich. In the same letter, Ratzel directed Miller's counsel to "contact [him] with any questions or comments." Miller's counsel made no attempt to contact Ratzel. Furthermore, when the

---

[10] We do not agree with the concurrence's assertion that Ratzel probably could not have represented Zurich on its underinsured motorist claim because he faced a conflict of interest. Concurrence, ¶ 83. Even if the concurrence were correct, that representing an insurer on both a Wis. Stat. § 102.29 claim and an underinsured motorist claim could create a conflict of interest, *id.,* ¶ 88, we see no potential for such a conflict in this case.

Acuity, Smith's insurer, agreed to pay its policy limit of $100,000, and Smith contributed $2,000 to a settlement fund on Miller's negligence claim. There was no dispute as to the negligence of the tortfeasor, Smith. Because Smith's negligence was undisputed and because Acuity offered its full policy limit, thereby removing the potential for Zurich to receive more money, there is no potential for a conflict of interest under the facts of this case.

underinsured motorist coverage claim was made, Ratzel was not served with a copy of the amended complaint. From this record, we cannot conclude that Zurich received the effective assistance of counsel in regard to defending against Miller's underinsured motorist coverage claim. Accordingly, this factor weighs in favor of Zurich.

¶ 54. Third, we look to "whether relief is sought from a judgment in which there has been no judicial consideration of the merits and the interest of deciding the particular case on the merits outweighs the finality of judgments." *Id.*, ¶ 11 (quoting *M.L.B.*, 122 Wis. 2d at 552). As is the nature of default judgments, there has been no judicial consideration of the merits of Miller's claim seeking underinsured motorist coverage. In light of the significant amount of money at stake and our preference "to afford litigants a day in court and a trial on the issues," we conclude that judicial consideration of the merits outweighs the finality of the default judgment. *Split Rock*, 253 Wis. 2d 238, ¶ 64. Accordingly, this factor weighs in Zurich's favor.

¶ 55. Fourth, we consider whether Zurich has a meritorious defense to Miller's claim for underinsured motorist coverage. *See Sukala*, 282 Wis. 2d 46, ¶ 11. "The crux of the inquiry is whether, given another chance, the party seeking to vacate the judgment could reasonably expect a different result." *Allstate*, 305 Wis. 2d 400, ¶ 14.

¶ 56. In its answer, Zurich affirmatively asserted that the commercial automobile insurance policy it issued to General Parts did not include underinsured motorist coverage because General Parts rejected its offer of underinsured motorist coverage. In support of its assertion, Zurich filed the affidavit of Richard B. Guirlinger (Guirlinger), corporate controller, secretary

and treasurer of General Parts, in support of its motion for relief from default judgment. Guirlinger averred that "General Parts routinely and consistently rejected any and all . . . underinsured motorist insurance coverage." He further averred, "[a]s to the Zurich policy[,] . . . I rejected all underinsured motorists coverage for the state of Wisconsin for that policy year." Attached to Guirlinger's affidavit was a copy of the form, signed by General Parts, demonstrating that General Parts rejected Zurich's offer of underinsured motorist coverage. Moreover, *before the amended complaint was filed,* Miller's counsel was informed by General Parts and Lyons, on behalf of GAB Robins, that General Parts had rejected underinsured motorist coverage and provided counsel a copy of the rejection form. Based on the foregoing, if Zurich is granted relief from the default judgment, it "could reasonably expect a different result." *Id.*, 305 Wis. 2d 400, ¶ 14. Stated otherwise, if permitted to proceed, it is reasonably likely that Zurich will prevail on the merits of this case. Accordingly, this factor weighs heavily in Zurich's favor.

¶ 57. The fifth factor we consider is "whether there are intervening circumstances making it inequitable to grant relief." *Sukala,* 282 Wis. 2d 46, ¶ 11 (quoting *M.L.B.,* 122 Wis. 2d at 553). Miller fails to point to any intervening circumstances making it inequitable to grant relief. Moreover, there has been no showing that Miller was prejudiced in any way by Zurich's delay in filing an answer to the amended complaint. Accordingly, this factor, too, weighs in Zurich's favor.

¶ 58. The extraordinary circumstances test also directs courts to consider "any other factors bearing upon the equities of the case." *Id.*, ¶ 10. We note that the record in this case presents many irregularities,

668

procedural and otherwise, generated in part by plaintiff's counsel and circuit court personnel. The procedural irregularities include the numerous notices and letters regarding court proceedings not provided by plaintiff's counsel to Ratzel when Ratzel was counsel of record, and not provided to Zurich as well;[11] and the court personnel error of failing to list Ratzel as Zurich's attorney of record. We also consider Fountain's failure to forward the amended summons and complaint to GAB Robins because of her mistaken belief that the amended complaint was a duplicate of a complaint she received a few days prior in which Miller named Zurich as a defendant in the same court. We think the procedural irregularities demonstrate unfairness in the resolution of this dispute. As such, this too weighs in favor of granting Zurich relief from the default judgment.

¶ 59.  Because of the five interest of justice factors weighing in favor of Zurich; the numerous errors, procedural and otherwise, that were generated in part by plaintiff's counsel and the circuit court personnel who were responsible for listing Ratzel as Zurich's attorney of record into the CCAP system; and our policy disfavoring default judgments, we conclude that Zurich has met its burden of proving that extraordinary circumstances exist justifying vacating the default judgment.

---

[11] For example, counsel for Miller sent a letter to the circuit court on January 10, 2006, requesting that it keep the case open for future proceedings. Neither Zurich nor Ratzel were sent a copy of this letter. *See supra* ¶ 13. By this letter, Miller engaged in what could be construed as an ex parte communication with the circuit court. By granting Zurich relief from the default judgment, we decline to give Miller's counsel the benefit of this communication that contributed to the entry of the default judgment.

¶ 60.  Accordingly, we reverse and remand to the circuit court to vacate the default judgment. It is implicit within our order to remand that Zurich's previously filed answer be deemed timely. It would be a "useless waste" to vacate the default judgment if on remand Zurich's answer would not be deemed timely because the circuit court would again be "compelled to enter the default judgment [only] to immediately entertain a motion to set it aside" on the grounds established in this opinion. *See Willing v. Porter,* 266 Wis. 428, 430, 63 N.W.2d 729 (1954) (facing similar circular reasoning and concluding that a circuit court may properly refuse to enter a default judgment and permit a party to answer if it would be required to grant relief from the default judgment if entered); *Johns,* 201 Wis. 2d at 605–06 (same).

## III.  CONCLUSION

¶ 61.  We conclude that the circuit court erroneously exercised its discretion in denying Zurich's motion for relief from a $2 million default judgment. Because we so conclude, we need not decide whether the circuit court properly entered the default judgment against Zurich or whether the circuit court properly limited Miller's damages to $2 million. Accordingly, we reverse the court of appeals decision affirming the circuit court's denial of Zurich's motion for relief from judgment and remand to the circuit court to vacate the default judgment.

¶ 62.  *By the Court.*—The decision of the court of appeals is reversed and is remanded to the circuit court for further proceedings.

¶ 63. ANN WALSH BRADLEY, J. *(concurring).* In my view, the majority is wrong about the law. By converting the holistic inquiry about "extraordinary

circumstances" into a formulaic five-part test, it transforms ordinary cases into "extraordinary" ones and undermines the finality of judgments.

¶ 64. The majority is also wrong about the facts. Its assertion that Ratzel was "Zurich's attorney of record" is much too simplistic. It overlooks the potential for conflict of interest inherent in the dual representation advocated by the majority and ignores the facts of record which suggest that Zurich had a different attorney who was actually representing its underinsured motorist (UIM) defense. Accordingly, the "procedural irregularities" identified by the majority did not contribute to the default judgment and are irrelevant to the determination of whether relief is warranted.

¶ 65. When I examine the record, I conclude that the circuit court erroneously exercised its discretion—not because it failed to consider five interest of justice factors, but rather because it failed to balance the competing interests of finality and fairness. Considering a range of relevant factors, I conclude that relief is warranted under the facts of this case. Accordingly, I respectfully concur.

I

¶ 66. Extraordinary circumstances are not presented by the ordinary case. However, the analysis set forth by the majority transforms the ordinary case into the "extraordinary." The majority converts the holistic inquiry for "extraordinary circumstances" under Wis. Stat. § 806.07(1)(h) into a formulaic five-factor test. As a result, it disregards this court's warning that subsection (h) "should be used sparingly" and should not be interpreted "so broadly as to erode the concept of finality." *State ex rel. M.L.B. v. D.G.H.,* 122 Wis. 2d 536, 550, 552, 363 N.W.2d 419 (1985).

¶ 67. Wisconsin Stat. § 806.07(1)(h) provides that a court can order relief from a judgment for "[a]ny other reasons justifying relief from the operation of the judgment." The seminal case addressing the interpretation and application of subjection (h) is *M.L.B.*, 122 Wis. 2d 536. There, this court explained that section 806.07 "attempts to achieve a balance between the competing values of finality and fairness." *Id.* at 542.

¶ 68. Unlike some of the other subsections in § 806.07(1), there is no time limit for bringing an action under subsection (h). "[T]he ground for granting relief is 'justice' and the time for bringing the motion is 'reasonable.'" *Id.* at 544–45. Therefore, if interpreted broadly, subsection (h) could significantly erode the finality of judgments.

¶ 69. Recognizing this concern, the *M.L.B.* court cautioned: "We are mindful—and the circuit courts should be mindful—that finality is important and that subsection (h) should be used sparingly." *Id.* at 550. "The court should not interpret extraordinary circumstances so broadly as to erode the concept of finality, nor should it interpret extraordinary circumstances so narrowly that subsection (h) does not provide a means for relief for truly deserving claimants." *Id.* at 552. Under subsection (h), a party is entitled to relief "only when the circumstances are such that the sanctity of the final judgment is outweighed by the incessant command of the court's conscience that justice be done in light of all the facts." *Id.* at 550 (emphasis omitted).

¶ 70. To achieve the delicate balance between fairness and finality, the court set forth the "extraordinary circumstances" standard. *Id.* at 549. It explained that subsection (h) "invokes the sensibilities of the court," and "it is difficult to articulate the criteria on

which the finding of extraordinary circumstances is based." *Id.* at 552. In making a determination, "the court must consider a wide range of factors." *Id.* Because subsection (h) "invokes the pure equity power of the court," *Schwochert v. Am. Fam. Mut. Ins. Co.*, 172 Wis. 2d 628, 633–34, 494 N.W.2d 201 (1993), the factors that a circuit court should consider will depend on the facts and equities of each individual case.

¶ 71.  *M.L.B.* is clear. Extraordinary circumstances are not presented by the ordinary case.

¶ 72.  However, the analysis set forth by the majority converts the holistic inquiry adopted by *M.L.B.* into a formulaic five-factor test: "We conclude that *M.L.B.* . . . unambiguously establish[es] that a circuit court is to consider the five interest of justice factors in determining whether extraordinary circumstances are present under Wis. Stat. § 806.07(1)(h) such that relief from a judgment . . . is appropriate." Majority op., ¶ 41.

¶ 73.  The five factors set forth by the majority are: (1) whether the judgment was the result of the conscientious, deliberate, and well–informed choice of the claimant; (2) whether the claimant received the effective assistance of counsel; (3) whether relief is sought from a judgment in which there has been no judicial consideration of the merits and the interests of deciding the particular case on the merits outweighs the finality of the judgment; (4) whether there is a meritorious defense to the claim; and (5) whether there are intervening circumstances making it inequitable to grant relief. *Id.*, ¶ 36.

¶ 74.  The majority acknowledges that most default judgments would satisfy the test it sets forth: "We agree with Miller's assessment that many of the factors will weigh in favor of a party seeking relief from a default judgment entered for failure to timely answer." *Id.*, ¶ 46.

¶ 75. In most cases where there is a default, the majority's first factor will weigh in favor of relief because the judgment will not have been "the result of the conscientious, deliberate and well–informed choice of the claimant." Unlike in *Brunswick Corporation,* discussed by the majority,[1] a defaulting party generally does not choose to concede anything—rather, it simply fails to answer.

¶ 76. Likewise, the second factor, "whether the claimant received the effective assistance of counsel," will usually weigh in favor of relief from a default judgment. An effective attorney would not likely default and give up a client's defenses to a claim.

¶ 77. The third factor, "whether relief is sought from a judgment in which there has been no judicial consideration of the merits," will often be present. By definition, there is no judicial consideration of the merits when there is default judgment. Under the majority's analysis, it seems that the "preference to afford litigants a day in court and a trial on the issues" will often outweigh finality. *See* majority op., ¶ 54.

¶ 78. The fourth factor, "whether there is a meritorious defense to the claim," will often be true. If there was no meritorious defense, what reason would the defaulting party have for seeking relief from the judgment?

¶ 79. It is unclear how the fifth factor, "whether there are intervening circumstances making it inequitable to grant relief," would be applied. If intervening circumstances refer to circumstances that occur after the entry of judgment, this factor does not take into consideration the reasons for default.

---

[1] Majority op., ¶ 50 (citing *Allstate Ins. Co. v. Brunswick Corp.,* 2007 WI App 221, 305 Wis. 2d 400, 740 N.W.2d 888).

¶ 80.  Missing from the majority's test is any consideration of the defaulting party's reasons for defaulting and whether those reasons should be excused. Thus, the majority's test would appear to be equally applicable to a party that intentionally failed to respond to a complaint or was inexcusably negligent.[2]

¶ 81.  Contrary to the majority, I conclude that most default judgments are ordinary, rather than extraordinary, and will not warrant relief. By failing to actually require "extraordinary" circumstances, the majority ignores the *M.L.B.* court's caution that subsection (h) "should be used sparingly" and should not be interpreted "so broadly as to erode the concept of finality." 122 Wis. 2d at 550, 552.

¶ 82.  The ultimate question for the circuit court should not be whether a party seeking to reopen a judgment meets a five-factor test. Rather, it should be a holistic inquiry into whether there are extraordinary circumstances "such that the sanctity of the final judgment is outweighed by the incessant command of the court's conscience that justice be done in light of *all* the facts." *Id.* at 550.

II

¶ 83.  In addition to misconstruing the law, the majority misconstrues the facts. Its assertion that Ratzel

---

[2] Although I agree with the majority that a defaulting party need not meet the legal standard for excusable neglect to be entitled to relief under subsection (h), I conclude that a defaulting party's reason for defaulting will likely weigh heavily in this inquiry. *See Johns v. County of Oneida,* 201 Wis. 2d 600, 609, 549 N.W.2d 269 (Ct. App. 1996) (noting that the defaulting party's nine-day delay in answering the complaint "appeared to be inadvertent rather than deliberate"). A party that sits back and knowingly defaults should not normally expect a court to conclude that the judgment is unfair.

was "Zurich's attorney of record" is much too simplistic. It overlooks the potential for conflict of interest inherent in the dual representation advocated by the majority and ignores the facts of record which suggest that Zurich had a different attorney who was actually representing its UIM defense.

¶ 84. At issue here are two different insurance claims: (1) the prosecution of a Wis. Stat. § 102.29 claim seeking reimbursement of benefits paid to Miller under a worker's compensation policy;[3] and (2) the defense of a UIM claim made under an automobile liability policy.[4] Even though both policies were issued by Zurich, they represent very different interests. The former's interest is aligned with the injured plaintiff,[5] and the latter's interest is aligned with the tortfeasor. Let me explain.

---

[3] Wisconsin's worker's compensation statutes provide that an "employer or compensation insurer who shall have paid or is obligated to pay a lawful claim under [worker's compensation] shall have the same right to make [a] claim or maintain an action in tort against any other party for such injury or death." Wis. Stat. § 102.29(1).

[4] Under most circumstances, underinsured motorist coverage may come into play when there is a tortfeasor from whom the plaintiff is legally entitled to recover compensatory damages and that tortfeasor's insurance is insufficient to cover the liability incurred. If Zurich issued an underinsured motorists policy, it would not be obligated to compensate Miller for his injuries if Miller was not legally entitled to recover damages from Smith.

[5] An insurer seeking subrogation is often named as an "involuntary plaintiff." "The statutory scheme under section 803.03(2) contemplates inclusion of a subrogated party claiming medical expenses as a plaintiff." 2 Arnold P. Anderson, *Wisconsin Insurance Law* § 10.95 (5th ed. 2004). However, it matters not whether the worker's compensation carrier is named as a plaintiff or an involuntary defendant—the interest it represents is the same.

¶ 85. The basis of the liability for both a Wis. Stat. § 102.29 claim and a UIM claim is the same—the tortfeasor's conduct. But the interests represented by those claims are opposite.

¶ 86. When prosecuting a § 102.29 claim, the attorney wants to maximize the negligence of the tortfeasor. The greater the negligence, the more money that will be available to reimburse the worker's compensation insurer under the § 102.29 formula.

¶ 87. The attorney representing the UIM carrier, however, has an interest in minimizing the liability of the tortfeasor. The exposure of the UIM carrier is minimized whenever the negligence of the tortfeasor is minimized.

¶ 88. Can an attorney in the same case both prosecute a § 102.29 claim and defend a UIM claim? The answer is probably not, because in the usual circumstance the attorney would be representing competing interests. Such dual representation poses the potential for a conflict of interest.

¶ 89. A central premise of the majority opinion is that relief is warranted because of "procedural irregularities" that occurred in the circuit court. The majority asserts that Attorney Ratzel was Zurich's "attorney of record." Majority op., ¶ 58. It considers two irregularities, "generated in part by plaintiff's counsel and [] circuit court personnel" in determining that extraordinary circumstances justify vacating the default judgment: (1) documents and notices that were not provided to Ratzel during the course of the litigation; and (2) the failure of circuit court personnel to list Ratzel "as Zurich's attorney of record" on CCAP. *Id.*, ¶¶ 58–59.

¶ 90. The irregularities identified by the majority relate to lack of notice to Ratzel. But Ratzel represented Zurich's worker's compensation interest. He informed Miller by letter that he did not represent Zurich on any

677

UIM policy it issued. *Id.*, ¶ 7. Not only that, but it is likely that Ratzel could not represent Zurich's UIM interest due to the potential conflict of interest discussed above.

¶ 91. In fact, it appears that Zurich had a different attorney who was actually representing its UIM interest. Attorney Lyons corresponded with Miller's counsel about potential UIM coverage over a period of months. *See Id.*, ¶ 8.

¶ 92. In January of 2005 Lyons sent Miller's counsel a letter stating that his firm had been retained with regard to Miller's UIM claim, and he asked for Miller's medical reports.[6] In February, he provided Miller's counsel with the relevant policy and asserted "[I]t would be our position that there is no [UIM] coverage." In March, Lyons sent a letter inquiring: "Now that you have had an opportunity to review the materials, I simply wanted to know your position on [UIM] coverage. . . . If you agree with us that there is no coverage, I would ask that you please put that in writing; so that, we can document our file accordingly and conclude this matter."

¶ 93. None of the irregularities identified by the majority relate to Lyons, who appeared to be representing Zurich's UIM interest.[7] Because of the different

---

[6] The letter stated in part: "With regards to [a] potential UIM claim, I am obtaining certified copies of the pertinent policy. I have reviewed an uncertified copy, but I want to obtain a certified copy before any decisions are made. Until I have that, I cannot tell you our position on whether there is any UIM coverage or not. It would appear that there may not be, in this case, but I cannot make that analysis until I have a certified copy of the policy."

[7] Lyons received a copy of the amended complaint by letter. Majority op., ¶ 14. However, he informed Miller that he could

678

interests represented by the two policies and the potential conflict of interest, I conclude that the "irregularities" identified by the majority are a red herring.

¶ 94.  I agree that, because Ratzel was representing Zurich's interest in the worker's compensation policy, he should have received the notices and letters, and his name should have been entered on CCAP. However, I conclude that any failure to provide notice to Ratzel did not contribute to the default. Even if notice had been provided to Ratzel, it would have made no difference. Ratzel affirmatively stated that he was not representing Zurich's interest in any UIM policy. Due to the possible conflict of interest, Ratzel likely could not file an answer. The real reason that Zurich defaulted is simple—its claims adjuster made a mistake.

### III

¶ 95.  Absent an erroneous exercise of discretion, an appellate court should not substitute its own judgment for that of the circuit court—even if it would have decided the issue differently. *See Kolupar v. Wilde Pontiac Cadillac, Inc.*, 2004 WI 112, ¶ 22, 275 Wis. 2d 1, 683 N.W.2d 58. A circuit court exercises its discretion when it examines the relevant facts, applies a proper standard of law, and using a demonstrated rational

---

not accept service on behalf of Zurich: "I have not made an official appearance in this action. I am not authorized to accept service on behalf of Zurich, and I cannot be served with all of the other discovery materials, since no official appearance has been made." Lyons insisted that Miller serve Zurich "through normal channels . . . . You will need to serve them directly and we'll have to go from there." Neither Lyons nor any other attorney answered the complaint on Zurich's behalf.

process, reaches a decision that a reasonable judge could reach. *Loy v. Bunderson,* 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982).

¶ 96.  Here, Zurich filed a motion for relief under Wis. Stat. § 806.07(1)(h). When orally explaining its reasons for denying relief, the circuit court focused on its conclusion that service of the amended complaint was proper:

> I believe Zurich was served. Unfortunately, there may have been some confusion when the amended summons and complaint were received by Zurich. There may have been some confusion as well when court notices were sent to the address that we had, but the main service I believe was the service of the amended summons and I believe that the amended complaint had to go along with the amended summons and I think with that step being taken that there was notice to Zurich and that Zurich then had a responsibility to act in some fashion.
>
> . . . .
>
> [A]lthough there is a claim that this is not something that is done in the interest of justice, I'm aware that there is at least one other case where the coverage issue, although there was some coverage, was not an issue that the Court then was able to deal with.
>
> And I believe under the circumstances that the unfortunate failure to respond to the amended summons and complaint brings us to where we are today. I'm going to deny the motion for relief as has been requested by Zurich.

¶ 97.  When denying the motion for relief, the circuit court appeared to consider only one factor—that service was proper. It is not surprising that the circuit court's analysis focused on this one factor, given that

the bulk of Zurich's brief was devoted to allegations about the propriety of service.

¶ 98.   Nevertheless, I now review the record to determine whether the circuit court examined the relevant facts and applied a proper standard of law when it denied the motion to vacate the default judgment under Wis. Stat. § 806.07(1)(h) in the interest of justice. The record makes clear that the circuit court failed to balance the competing interests of finality and fairness. I conclude that it erroneously exercised its discretion.

¶ 99.   In independently evaluating the competing interests of finality and fairness, I determine that extraordinary circumstances are present here. Finality of judgment is an important consideration. This judgment, however, had not been final for long when Zurich moved for relief. In fact, Zurich rigorously contested coverage for months before the default judgment was entered.

¶ 100.   Although Zurich did not timely answer the amended complaint, its failure to timely answer was due to an inadvertent mistake of a claims adjuster. The claims adjuster mistook Miller's amended complaint as a duplicate of a complaint that she had already processed. Although the mistake may not rise to the legal standard of "excusable neglect," it does appear to have been an honest mistake.

¶ 101.   Once the mistake was discovered, Zurich's attorney moved quickly to remedy the default, filing an answer to the amended complaint only 17 days after the motion for default judgment was filed. This is not a case where the judgment was final long before the defaulting party sought to contest it.

¶ 102.   Further, this is not a case where Miller has relied on the default judgment, and nothing in the record suggests that Miller was prejudiced by Zurich's

delay in filing a response. For months, Miller had known that Zurich contested UIM coverage. I conclude that finality would not be significantly undermined by granting Zurich's motion.

¶ 103. The competing interest of finality is fairness. Here, there appear to be good reasons that this case should be tried on the merits. A default judgment was entered for a substantial sum of money—$2 million—on an underinsured motorists policy that may not even exist. Fairness weighs in favor of trying this case on the merits.

¶ 104. For the reasons set forth above, I conclude that extraordinary circumstances are present and that the interest in finality is overcome by the interest in fairness. Therefore, I determine that relief under Wis. Stat. § 806.07(1)(h) is warranted.

¶ 105. Ending the inquiry here leaves unanswered a procedural question that is bound to cause uncertainty on remand. The majority orders relief from judgment under subsection (h), and it remands to the circuit court to vacate the default judgment and decide this case on the merits. These instructions appear to leave the parties in procedural limbo.

¶ 106. In the circuit court, Zurich filed a motion to enlarge time to file an answer, which was denied. As the circuit court correctly explained, "[I]n order for me to grant a motion to extend the time for filing of an answer, I have to conclude that the failure to do so was as a result of excusable neglect[.]" The court could not determine "that the mistake that would have been made in the processing of the documents is such that it can constitute excusable neglect[.]" Although the court acknowledged that the facts of the case were "unfortunate," it denied the motion.

¶ 107. Because the motion to enlarge time was denied, Zurich's answer has never been accepted for filing by the court. Thus, the current status of the case is that no answer has been filed. On remand, the circuit court will be required to address this status, and therein lies a problem that has analytically been left unaddressed by both the majority opinion and this concurrence.

¶ 108. Wisconsin statutes provide that the circuit court may enlarge Zurich's time for filing an answer. However, it can do so only after it finds that the failure to answer was the result of excusable neglect and if the interests of justice would be served by the enlargement of time:

> When an act is required to be done at or within a specified time, the court may order the period enlarged but only on motion for cause shown and upon just terms. . . . If the motion is made after the expiration of the specified time, it shall not be granted unless the court finds that the failure to act was the result of excusable neglect.

Wis. Stat. § 801.15(2)(a).

¶ 109. In *Hedtcke v. Sentry Insurance Co.*, 109 Wis. 2d 461, 468, 326 N.W.2d 727 (1982), we explained that a circuit court may grant a motion to enlarge time if it "finds reasonable grounds for noncompliance with the statutory time period (which the statute and this court refer to as excusable neglect) and if the interests of justice would be served by the enlargement of time[.]" Further, "when the circuit court determines that there is no excusable neglect, the motion [to enlarge time] must be denied." *Id.* We reiterated these conclusions recently in *Estate of Otto v. Physicians Insurance Co. of Wisconsin, Inc.*, 2008 WI 78, ¶ 114, 311 Wis. 2d 84, 751 N.W.2d 805.

¶ 110. What, then, is the circuit court to do on remand? It has determined that there is no excusable neglect. Yet, under Wis. Stat. § 801.15(2)(a) and our case law, the court cannot enlarge the time for Zurich to file an answer unless it determines that the failure to act was due to excusable neglect. The circuit court will have to resolve this tension on remand.

¶ 111. For the reasons set forth above, I conclude that the circuit court failed to exercise its discretion when it denied Zurich's motion for relief under Wis. Stat. § 806.07(1)(h). I further conclude that extraordinary circumstances are present here. On remand, the circuit court will have to address the next question: whether, given its prior conclusion that there was no excusable neglect, it can grant Zurich's motion to enlarge time to file an answer. Accordingly, I respectfully concur.

¶ 112. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this concurrence.