**COURT OF APPEALS
DECISION
DATED AND FILED**

**June 4, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.      **2022AP1515**

**STATE OF WISCONSIN**

Cir. Ct. No.  2021CV112

**IN COURT OF APPEALS
DISTRICT III**

FLAMBEAU HYDRO, LLC,

   PLAINTIFF-RESPONDENT,

 V.

PARK FALLS INDUSTRIAL MANAGEMENT, LLC,

   DEFENDANT,

NIAGARA WORLDWIDE, LLC, E. J. SPIRTAS GROUP, LLC, D/B/A SPIRTAS WORLDWIDE AND ERIC SPIRTAS,

   DEFENDANTS-APPELLANTS.

APPEAL from an order of the circuit court for Marinette County: JAMES A. MORRISON, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Niagara Worldwide, LLC ("Niagara Worldwide"), E.J. Spirtas Group, LLC, d/b/a Spirtas Worldwide ("Spirtas Worldwide"), and Eric Spirtas ("Spirtas") (collectively "Niagara") appeal from an order denying Niagara's motion for reconsideration and relief from a judgment.  Niagara sought reconsideration of the circuit court's grant of default judgment to Flambeau Hydro, LLC ("Flambeau") and its denial of Niagara's motion to enlarge the time to answer Flambeau's complaint.  Niagara also sought relief from the default judgment pursuant to WIS. STAT. § 806.07(1)(h) (2021-22).[1]  Niagara argues that the court erred by applying an incorrect standard of law in granting Flambeau's motion for default judgment and by failing to consider the necessary factors when ruling on Niagara's motion for relief from judgment pursuant to § 806.07(1)(h).  We reject Niagara's arguments and affirm.

## BACKGROUND

¶2    Flambeau owns and operates hydroelectric power plants.  On June 10, 2021, Flambeau filed a complaint against Park Falls Industrial Management, LLC ("PFIM") and Niagara, alleging that PFIM breached its contract to purchase electricity produced by Flambeau's power plants for the operation of PFIM's paper mill.[2]  The complaint also alleged that Spirtas, on

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] Niagara Worldwide owned the paper mill and held an ownership interest in PFIM. Niagara Worldwide was affiliated with Spirtas Worldwide, which also held an ownership interest in PFIM.  Spirtas was the president of both Niagara Worldwide and Spirtas Worldwide.

(continued)

2

behalf of PFIM and Niagara, made several untrue representations to Flambeau regarding PFIM's ability to make required payments to Flambeau. Flambeau's claims against PFIM and Niagara included promissory estoppel; civil theft pursuant to WIS. STAT. § 895.446(1); and intentional, negligent, and strict responsibility misrepresentation.

¶3 On June 24, 2021, Flambeau served a summons and complaint on Niagara. Spirtas was served individually and in his capacity as president of Niagara Worldwide and Spirtas Worldwide. The summons stated that Niagara must respond with an answer to the complaint within forty-five days of the date of service. Niagara thus had to respond by Monday, August 9, 2021. On July 1, 2021, Spirtas contacted Flambeau's counsel stating that the Niagara entities were not represented by counsel and that he wanted to discuss Flambeau's claims. On the same day, Flambeau's counsel and Spirtas discussed the case over the phone and by e-mail. In an e-mail from Flambeau's counsel to Spirtas, counsel wrote: "You should be aware that there are [c]ourt-required deadlines for you to respond to the complaint that was served on you. The communications we are having do not postpone or extend any of those deadlines, and all rights and remedies of [Flambeau] are reserved." No subsequent communications occurred, and Niagara did not answer Flambeau's complaint by the August 9 deadline.

¶4 At some point during the week of August 9, 2021, Niagara retained Attorney Robert Devereux, who is located in Missouri. On August 11, 2021, Devereux attempted to contact Flambeau's counsel to request additional time for

_____

PFIM filed for Chapter 7 bankruptcy prior to the circuit court's entry of default judgment. As a result, no judgment was entered against PFIM, and it does not participate in this appeal.

Niagara to answer the complaint, but he was unable to speak with Flambeau's counsel until August 16, 2021. On that day, Devereux requested an additional fifteen days for Niagara to answer the complaint. Flambeau's counsel responded that she would confer with her client and then respond to Devereux. As he waited for that response, Devereux sought to obtain local counsel for Niagara in Wisconsin, which Niagara retained on August 20, 2021. On August 18, 2021, Flambeau's counsel informed Devereux that Flambeau would not grant Niagara an extension to answer the complaint.

¶5 On August 20, 2021, Flambeau filed a motion for default judgment based on Niagara's failure to timely answer the complaint. On August 27, 2021, Niagara filed its opposition to Flambeau's motion and moved to enlarge the time to answer. The circuit court granted Flambeau's motion and denied Niagara's motion, finding that Niagara had failed to state any grounds showing excusable neglect in failing to answer on time. The court later held a hearing on Flambeau's claim for damages, and it entered an original judgment (subject only to hearing evidence in support of an attorney fees award) on February 17, 2022.

¶6 On May 31, 2022, Niagara filed a motion to reconsider the entry of the default judgment and to vacate the judgment pursuant to WIS. STAT. § 806.07(1)(h). The circuit court held a hearing on Niagara's motion and denied it. The court found that Niagara had not shown that between Spirtas' first contact with Flambeau's counsel on July 1, 2021, and the deadline for answering the complaint on August 9, 2021, there were circumstances outside of Spirtas' control "that precluded him from hiring counsel after he had already been served and knew a lawsuit was existing and was aware of it and was specifically told orally and in writing your deadline is not extended." The court then entered a final

judgment totaling $344,047.03 in favor of Flambeau and against Niagara. Niagara now appeals. Additional facts will be provided below as necessary.[3]

## DISCUSSION

¶7 Whether to grant a motion to enlarge time and whether to grant a default judgment are decisions within the circuit court's discretion. *See Casper v. American Int'l S. Ins. Co.*, 2011 WI 81, ¶30, 336 Wis. 2d 267, 800 N.W.2d 880. Whether to grant relief from a judgment pursuant to WIS. STAT. § 806.07(1)(h) is also a decision within the circuit court's discretion. *Miller v. Hanover Ins. Co.*, 2010 WI 75, ¶29, 326 Wis. 2d 640, 785 N.W.2d 493. We review these decisions under the erroneous exercise of discretion standard. *Casper*, 336 Wis. 2d 267, ¶30; *Miller*, 326 Wis. 2d 640, ¶29. A circuit court does not erroneously exercise its discretion if it bases its decision "on the facts of record and on the application of a correct legal standard." *Miller*, 326 Wis. 2d 640, ¶29 (citation omitted). We will not reverse a circuit court's discretionary decision "if the record shows that discretion was in fact exercised and we can perceive a reasonable basis for the court's decision." *Id.*, ¶30 (citation omitted).

### I. Flambeau's motion for default judgment and Niagara's motion to enlarge the time to answer

¶8 Niagara first argues that the circuit court applied an improper legal standard when it originally granted the default judgment because it "only" considered whether Niagara's failure to timely answer Flambeau's complaint was

---

[3] In their briefing, both parties cite only to their appendices and fail to include parallel citations to the record. We remind counsel that the appendix is not the record, *see United Rentals, Inc. v. City of Madison*, 2007 WI App 131, ¶1 n.2, 302 Wis. 2d 245, 733 N.W.2d 322, and that parties must include citations to the record in their briefing. *See* WIS. STAT. RULE 809.19(1)(d)-(e).

the result of excusable neglect and it did not consider whether the default judgment would ultimately be vacated under WIS. STAT. § 806.07(1)(h). A default judgment may be granted as provided in WIS. STAT. § 806.02(1) to (4) "if no issue of law or fact has been joined on any claim asserted in a complaint … and if the time for joining issue has expired." Sec. 806.02(1). "When an act is required to be done at or within a specified time, the court may order the period enlarged but only on motion for cause shown and upon just terms." WIS. STAT. § 801.15(2)(a). If, however, the motion is made after that specified time expires, "it shall not be granted unless the court finds that the failure to act was the result of excusable neglect." *Id.* Excusable neglect is conduct that "might have been the act of a reasonably prudent person under the same circumstances," but it is "not synonymous with neglect, carelessness or inattentiveness." *Hedtcke v. Sentry Ins. Co.*, 109 Wis. 2d 461, 468, 326 N.W.2d 727 (1982) (citation omitted).

¶9      If the circuit court determines that there is no excusable neglect, it must deny the motion to enlarge the time to answer. *Id.* In making its determination regarding the existence of excusable neglect, the court should consider the effects of granting or denying the motion to enlarge the time to answer. *Id.* at 469. In particular, the court should be aware: that denying a motion to enlarge the time to answer may result in a default judgment for the plaintiff; that default judgments are disfavored by law and that the law "prefers, whenever reasonably possible, to afford litigants a day in court and a trial on the issues"; and "of the policies of prompt adjudication that can be advanced when a party that has failed to timely respond is held accountable for such delay." *Casper*, 336 Wis. 2d 267, ¶38 (citation omitted).

¶10      Here, the circuit court did not erroneously exercise its discretion by finding that Niagara had failed to show excusable neglect. Furthermore, the court

relied on more than just that finding. In its written decision, the court noted it was aware that a default judgment "should not be cavalierly granted" and that it should not "be granted as a matter of course," but it concluded that a default judgment was warranted under the circumstances presented in this case. The court found that Spirtas, on behalf of Niagara, had attempted negotiations with Flambeau's counsel long before Niagara retained counsel and long before the deadline to answer the complaint. It also found that Flambeau's counsel had specifically advised Spirtas that those negotiations "should not be understood to be a waiver of time limits or any grant of an extension." The court further found that Niagara's counsel failed to state any grounds for excusable neglect. In particular, the court found that Niagara was not specific as to when it actually retained counsel, given that Devereux's affidavit stated only that he had been retained "sometime the week of August 9." Given its consideration of the effect of denying Niagara's motion and Niagara's failure to provide any reasons for not timely answering the complaint, the court's finding that Niagara failed to show excusable neglect is not clearly erroneous.

¶11 Despite the foregoing, Niagara argues that in deciding whether to grant the default judgment, the circuit court was required to consider whether it would vacate the judgment under WIS. STAT. § 806.07(1)(h). Niagara cites **Johns v. County of Oneida**, 201 Wis. 2d 600, 549 N.W.2d 269 (Ct. App. 1996), and **Shirk v. Bowling, Inc.**, 2001 WI 36, 242 Wis. 2d 153, 624 N.W.2d 375, to support its contention. Those cases, however, do not require that a circuit court consider whether it would vacate a judgment under § 806.07(1) before granting a default judgment. Instead, **Johns** and **Shirk** held that a circuit court *may* consider whether it would vacate a default judgment under § 806.07(1) when determining whether to grant a default judgment in the first instance and that a court does not

7

erroneously exercise its discretion if it does so even after a finding of no excusable neglect.[4] *Johns*, 201 Wis. 2d at 605-06; *Shirk*, 242 Wis. 2d 153, ¶17. In other words, the legal premise of Niagara's argument is manifestly wrong.

¶12 In any event, although the circuit court here did not explicitly address WIS. STAT. § 806.07(1)(h) in its decision, the record shows that the court was aware that it could consider whether the default judgment would be vacated under § 806.07(1)(h). Both Flambeau's and Niagara's briefs regarding the motion to enlarge time and the motion for default judgment addressed § 806.07(1)(h). Niagara's brief in particular cited § 806.07(1)(h) and argued that the circumstances would justify vacating the default judgment under that statute because "justice requires allowing [Niagara] to answer the complaint." Flambeau's brief in response addressed § 806.07(1)(h) and argued that Niagara had failed to allege extraordinary or unique circumstances that would justify vacating the default judgment under § 806.07(1)(h).

¶13 In opposing the motion for default judgment, Niagara advanced no reason for its failure to timely answer Flambeau's complaint, and, for that matter (and as explained below), it failed to allege any extraordinary circumstances that would justify vacating the default judgment under WIS. STAT. § 806.07(1)(h). Accordingly, there was no basis for the court to consider whether it would vacate the default judgment pursuant to § 806.07(1)(h). We therefore cannot conclude

---

[4] Although they did not require it, both *Johns v. County of Oneida*, 201 Wis. 2d 600, 605-06, 549 N.W.2d 269 (Ct. App. 1996), and *Shirk v. Bowling, Inc.*, 2001 WI 36, ¶17, 242 Wis. 2d 153, 624 N.W.2d 375, encouraged that practice, given the obvious benefit of preserving judicial time and resources in denying a motion for default judgment when the circuit court itself knows it would be compelled to grant a motion to reopen the judgment under WIS. STAT. § 806.07(1).

that the circuit court erroneously exercised its discretion by granting a default judgment in Flambeau's favor without expressly considering whether it would vacate that judgment pursuant to § 806.07(1)(h).

## II. Niagara's motion for relief from judgment

¶14 Niagara's principal argument on appeal is that the circuit court erroneously exercised its discretion by failing to apply the interest of justice factors that a court considers when determining whether to grant relief under WIS. STAT. § 806.07(1)(h) and instead "only" applying an excusable neglect standard. In particular, Niagara contends that the court disregarded controlling precedent in *Miller* by concluding that a finding of excusable neglect is necessary for a court to entertain relief under § 806.07(1)(h), and that a defaulting party must present evidence as to the reason for the default before a court can provide relief under § 806.07(1)(h). *Miller*, 326 Wis. 2d 640, ¶41. Niagara's characterization of the court's ruling is not supported by the record, and, furthermore, the court's consideration of the factors for granting relief under § 806.07 ably supports its discretionary decision to deny such relief.

¶15 As to the first point—namely, Niagara's argument that the circuit court erred as a matter of law by concluding that a finding of excusable neglect is necessary for a court to entertain relief under WIS. STAT. § 806.07(1)(h)—the court did no such thing. At most, the court considered the lack of any reason for Niagara—a set of sophisticated business entities—not retaining counsel or filing an answer timely as *a* factor in determining whether extraordinary circumstances were present in this case. Indeed, the court expressly noted that the prior motion to enlarge the time to file an answer was "based upon excusable neglect ... and that's not what this motion is based upon." And when Niagara's counsel stated

9

that "excusable neglect was not part of the analysis on a motion under [§] 806.07(1)(h)," the court responded, "I just said that. We agree. I understand that's the rule …."

¶16 Furthermore, Niagara's appellate briefs conflate the analysis that occurred when the *initial grant* of default judgment was ordered with the standards that apply later when a motion *to vacate* that judgment is filed under WIS. STAT. § 806.07.[5] It is only when a circuit court disposes of the latter motion that the holding of **Miller** applies, in that a court entertaining such a motion must consider the interest of justice factors regardless of whether there has been a finding of excusable neglect. *See **Miller***, 326 Wis. 2d 640, ¶41. Here, the circuit court independently considered the interest of justice factors beyond just the lack of any excusable neglect.[6]

---

[5] In contending that Flambeau's arguments relied on the wrong legal standard for a motion to vacate under WIS. STAT. § 806.07(1)(h), Niagara cites to portions of Flambeau's brief in which it made arguments supporting the circuit court's original grant of the default judgment, not the court's handling of Niagara's later motion to vacate.

[6] To put a finer point on the conflation of standards by Niagara, it must be noted that our supreme court in **Miller v. Hanover Insurance Co.**, 2010 WI 75, ¶¶38, 47, 326 Wis. 2d 640, 785 N.W.2d 493, concluded as a matter of law that the circuit court erred by granting default judgment without ever considering the interest of justice factors. Our supreme court easily held that the circuit court's reasons for granting default judgment were inadequate. **Id.**, ¶47. In contrast, and as we explain in this opinion, no such complete failure to consider the interest of justice factors occurred here.

Furthermore, when our supreme court independently applied the interest of justice factors in **Miller**, it plainly considered facts regarding the procedural history of the case, egregious as they were against the defaulting party, such as "the numerous errors, procedural and otherwise, that were generated in part by plaintiff's counsel and the circuit court personnel who were responsible for listing [the defaulting party's attorney] as [the defaulting party's] attorney of record into the CCAP system." **Id.**, ¶59. Indeed, it seems dubious that some of the interest of justice factors can be adequately assessed without some consideration of the underlying reasons leading to the default judgment. To the extent Niagara intends to so argue, we reject that notion.

¶17    Accordingly, we now turn to our assessment of the circuit court's consideration of Niagara's motion under WIS. STAT. § 806.07(1)(h).  In determining whether to vacate a default judgment under § 806.07, the court must be aware of three general considerations:  (1) § 806.07(1) is remedial in nature and is liberally construed; (2) "the law prefers, whenever reasonably possible, to afford litigants a day in court and a trial on the issues"; and (3) "default judgments are regarded with particular disfavor."  *Miller*, 326 Wis. 2d 640, ¶31 (citation omitted).  Section 806.07(1)(h) allows a court to relieve a party from a judgment for "[a]ny other reasons justifying relief from the operation of the judgment." Sec. 806.07(1)(h).  Our supreme court has determined that § 806.07(1)(h) allows a court to grant relief from a default judgment "when extraordinary circumstances are present justifying relief in the interest of justice."  *Miller*, 326 Wis. 2d 640, ¶35; *see also* ***State ex rel. M.L.B v. D.G.H.***, 122 Wis. 2d 536, 549, 363 N.W.2d 419 (1985) ("We are persuaded that the 'extraordinary circumstances' test is an appropriate way to approach claims for relief under [§] 806.07(1)(h).").

¶18    Extraordinary circumstances are circumstances "where 'the sanctity of the final judgment is outweighed by the incessant command of the [circuit] court's conscience that justice be done in light of *all* the facts.'"  *Miller*, 326 Wis. 2d 640, ¶35 (citation omitted).  To determine whether extraordinary circumstances are present, the court must consider several factors while "keeping in mind the competing interests of finality of judgments and fairness in the resolution of the dispute."  *Id.*, ¶36.  These factors include, but are not limited to:  (1) "whether the judgment was the result of the conscientious, deliberate and well-informed choice of the claimant"; (2) "whether the claimant received the effective assistance of counsel"; (3) "whether relief is sought from a judgment in which there has been no judicial consideration of the merits and the interest of

11

deciding the particular case on the merits outweighs the finality of judgments"; (4) "whether there is a meritorious defense to the claim"; and (5) "whether there are intervening circumstances making it inequitable to grant relief." ***Id.*** (citation omitted).

¶19 There are two important dictates from our supreme court in applying these factors. First, the party seeking relief has the burden of showing that extraordinary circumstances exist. ***Id.***, ¶34. Second, a circuit court "should be mindful … that finality is important and that [WIS. STAT. § 806.07(1)(h)] should be used sparingly." ***M.L.B***, 122 Wis. 2d at 550.

¶20 Here, the circuit court considered the above factors in concluding that Niagara had failed to allege extraordinary circumstances justifying relief from the default judgment, and the record shows a reasonable basis for the court's decision. The court recognized that default judgments are "not the normal course," that litigants "should have their day in court," and that default judgments "should not be cavalierly granted." Nevertheless, the court concluded that the default judgment here was "granted for good reason." The court also recognized that Niagara had to show unique or extraordinary circumstances justifying relief. Although the court focused on Niagara's lack of reasons for failing to timely answer Flambeau's complaint, the court did consider all of the above factors in reaching its decision denying Niagara's motion to vacate the default judgment, and the record supports its decision.

¶21 First, it was reasonable for the circuit court to find that the default judgment was the result of Niagara's conscientious, deliberate, and well-informed choice. Niagara was aware that a failure to answer Flambeau's complaint would result in a default judgment, yet the record is devoid of any reason why it still

failed to timely answer. In this regard, it is important to remember that the burden of proving extraordinary circumstances lies with the defaulting party—here, Niagara. *See Miller*, 326 Wis. 2d 640, ¶34. As the court noted, Niagara had to provide some facts to support its argument that the default judgment was entered "through no fault of [its] own," and Niagara had not provided any facts explaining what it did between July 1, 2021, and August 9, 2021, or any facts showing that "something stopped Mr. Spirtas from hiring a lawyer before the last possible day to answer a complaint."

¶22     The summons that Flambeau served on Niagara in June 2021 stated that the court could grant a judgment against Niagara if it failed to answer the complaint within forty-five days. Then, on July 1, 2021—approximately one month before the August 9, 2021 deadline—Spirtas, on behalf of Niagara, spoke with Flambeau's counsel, and counsel made Spirtas aware of the deadline for responding to the complaint and that his discussions with counsel did not constitute an extension of that deadline. Despite these warnings, there is nothing in the record indicating that Niagara did anything to respond to the complaint between the July 1 discussions and the August 9 deadline. Although Niagara eventually opposed the motion for default judgment and moved to enlarge the time to answer, Niagara only did so after the deadline to answer had already passed and after Flambeau filed its motion for default judgment. Based on these facts, it was reasonable for the circuit court to demand more from Niagara (the party with the burden to show extraordinary circumstances) regarding its failure to timely answer the complaint in order to find that the default judgment was *not* the result of

Niagara's deliberate and well-informed choice. Accordingly, this factor weighs strongly against Niagara.[7]

¶23 Second, Niagara received the effective assistance of counsel. Although retained either on or after the August 9, 2021 deadline to answer, Niagara's counsel promptly sought an extension from Flambeau. Once that request was denied, Niagara's counsel filed a motion to enlarge the time to answer in the circuit court and opposed Flambeau's motion for default judgment. Here, the court clearly considered Niagara's counsel's efforts in defending against the default judgment and did not accuse counsel of a lack of effort. Accordingly, this factor weighs against Niagara.

¶24 Third, given the nature of a default judgment, there has largely been no judicial consideration of the merits of Flambeau's claims, other than the discussion of potential defenses, which we discuss shortly. Here, the circuit court considered the nature of a default judgment, noting that default judgments are "not

---

[7] This situation is completely different than what occurred in *Miller*, the case that Niagara heavily relies on. In *Miller*, a series of procedural irregularities occurred that resulted in a default judgment against Zurich, the defendant insurance company. *Miller*, 326 Wis. 2d 640, ¶51. These irregularities resulted from the plaintiffs' counsel and the court's "failure to inform Zurich's counsel of record of proceedings, correspondence and pleadings," including an amended summons and complaint. *Id.*, ¶¶16, 51. In seeking relief from the default judgment, Zurich submitted evidence of eighteen documents it had not received and evidence that its attorney was not listed as Zurich's counsel of record. *Id.*, ¶22. Given these circumstances, our supreme court held that the default judgment "was not an issue presented to and considered by Zurich" and that the judgment was entered through no fault of Zurich. *Id.*, ¶51. It was in this context that our supreme court held that the WIS. STAT. § 806.07(1)(h) factors allow a court to grant relief from a default judgment despite no finding of excusable neglect.

In contrast, here, a default judgment *was* an issue presented to and considered by Niagara. Niagara was served with the summons and complaint, and Spirtas, on Niagara's behalf, engaged in discussions with Flambeau's counsel. Furthermore, unlike Zurich's submission of evidence, Niagara did not present any evidence that something similar to the procedural irregularities in *Miller* prevented it from timely answering Flambeau's complaint.

the normal course" and that litigants "should have their day in court." The court also stated that it wanted "the parties to have an opportunity to litigate defenses if they're real." Because we view default judgments with disfavor and we prefer to afford litigants their day in court, judicial consideration of the merits here outweighs the finality of the default judgment. *See **Miller***, 326 Wis. 2d 640, ¶¶31, 36. Accordingly, this factor weighs in favor of Niagara.

¶25 Fourth, and despite the foregoing consideration, Niagara did not sufficiently allege meritorious defenses to Flambeau's claims. Here, "[t]he crux of the inquiry is whether, given another chance, the party seeking to vacate the judgment could reasonably expect a different result." ***Miller***, 326 Wis. 2d 640, ¶55 (citation omitted). Niagara never filed an answer with affirmative defenses, so it first alleged its defenses in its brief contesting Flambeau's damages. It later raised these same defenses in its motion seeking relief from the default judgment. The circuit court noted Niagara's defenses, but it also recognized that Niagara had not provided any evidence to support those defenses. Specifically, the court stated that Spirtas, on behalf of Niagara, had not "come into this [c]ourt at this point in response to say these are the defenses I have, and under oath, I'm telling you this is the evidence that will support it."

¶26 The record supports the circuit court's finding that Niagara failed to provide evidence supporting its claimed defenses. In its briefing, Niagara argued, albeit only generally, that: Flambeau had failed to mitigate its damages; Flambeau had failed to allege any facts entitling it to recover damages from Niagara Worldwide and Spirtas Worldwide, as opposed to from PFIM; Flambeau's contract with PFIM barred its promissory estoppel claim; the economic loss doctrine barred Flambeau's intentional misrepresentation claim; and Flambeau's reliance on Spirtas' representations was not reasonable. Niagara challenged the

15

allegations in Flambeau's complaint and asserted, without factual support or explanation, that the "breadth" of its available defenses justified vacating the default judgment. Without more, the court could not find that it was reasonable for Niagara to expect a different result if the default judgment were vacated.

¶27 Niagara does no better on appeal. Its appellate brief simply restates the defenses it raised in the circuit court and, without further explanation, summarily concludes that "consideration of these broad and numerous legal and factual defenses demonstrates it is reasonable to expect a different effect if the matter is considered on its merits." Niagara fails to explain on what specific factual basis it could reasonably expect a different result if the default judgment were vacated. These omissions are particularly stark given how thoroughly Flambeau addressed the alleged merits of Niagara's asserted defenses in its brief. Simply asserting that it had meritorious defenses and listing those defenses in general terms is insufficient. Given the lack of facts to support its defenses and its failure to explain its defenses, we have no reason to conclude that Niagara's alleged defenses rise to the level of meritorious defenses. Accordingly, this factor weighs strongly against Niagara.

¶28 Finally, intervening circumstances make it inequitable to grant relief. Here, the circuit court considered that the case had been ongoing for almost one year, acknowledging Flambeau's argument that this case "has just been one situation after another where nothing's been done timely," that Flambeau was entitled to its judgment, and that it wanted to move forward. The record shows that approximately seven months passed between the court granting Flambeau's motion for default judgment and Niagara's motion for relief from that judgment. Although the court held a hearing to determine damages during that period, Niagara knew of the default judgment against it and delayed seeking relief until

16

after the court made its damages determination. Even though the court only briefly addressed the intervening circumstances factor, it acknowledged Flambeau's concerns with Niagara's delays. Given that Niagara sought to move forward with a final resolution of the case, the interest in finality of judgments here weighs against Niagara.[8]

¶29 In sum, the circuit court considered the above factors and, after weighing them out reasonably found that Niagara had failed to show that extraordinary circumstances existed justifying relief from the default judgment. The court did not commit any error of law in doing so. Because the record provides a reasonable basis for the court's decision, it did not erroneously exercise its discretion by denying Niagara's motion for relief pursuant to WIS. STAT. § 806.07(1)(h).

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[8] The circuit court did not further address any other factors bearing upon the equities of the case, and we do not discern any additional relevant factors. *See Miller*, 326 Wis. 2d 640, ¶58 (noting that the extraordinary circumstances test requires that courts also consider any other factors bearing upon the equities of the case).